958 F.2d 1192
 34 ERC 1401, 60 USLW 2592, 22 Envtl.
L. Rep. 20,683
 B.F. GOODRICH COMPANY; Upjohn Company; Dow Corning
Corporation; Reynold Aluminum Building Products
Company; Uniroyal Chemical Company,
Inc. and Hoechst Celenese
Corporation,
Plaintiffs-Appellees,
v.
Harold MURTHA; A.C. Hampson Printing; A.W. Sandora & Sons;
Action Refuse; Action Moving Co., Defendants,
and
Town of Beacon Falls; Town of Bethany; Connecticut
Resources Recovery Authority; Town of Hamden; Town of
Killingworth; Town of Middlebury; City of Milford; City
of New Haven; Town of Orange; Town of Plymouth; Town of
Seymour; Town of Stratford; Town of Thomaston; City of
Waterbury; and Town of Westport, Defendants-Appellants.
UNIROYAL CHEMICAL CO., INC., Plaintiff,
v.
Harold MURTHA; Murtha Trucking, Inc.; Murtha Enterprises,
Inc., Defendants,
and
City of Ansonia; Town of Beacon Falls; Town of Bethany;
Town of Killingworth; Town of Middlebury; Borough of
Naugatuck; New Haven Housing Authority; Town of Orange;
Town of Plymouth; Town of Seymour; City of Shelton; City
of Stamford; Town of Stratford; Town of Thomaston; Town
of Watertown; Watertown Housing Authority; Town of
Westport and Town of Woodbury, Defendants-Appellants.
STATE OF CONNECTICUT, Plaintiff,
v.
Harold MURTHA; Murtha Trucking, Inc.; Murtha Enterprises,
Inc., Defendants.
UNITED STATES of America, Plaintiff,
v.
Harold MURTHA; Terrance Murtha; Murtha Trucking, Inc., Defendants.
UNITED STATES of America, Plaintiff,
v.
ARMSTRONG RUBBER COMPANY; Eastern Company; Primerica
Corporation, Defendants.
 No. 375, Docket 91-7450.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 2, 1991.
Decided March 12, 1992.
 
 William A. Butler, Washington, D.C., (Patricia Ross McCubbin, Angus E. Crane, Dickstein, Shapiro & Morin, Washington, D.C., W. Wilson Keithline, Hartford, Conn., of counsel), for appellants Town of Beacon Falls, et al.
 Louis R. Pepe, Hartford, Conn. (Pepe & Hazard, Hartford, Conn., Deming E. Sherman, Edwards & Angell, Providence, R.I., Susan H. Shumway, Shumway & Merle, Southport, Conn., for appellees B.F. Goodrich Co., et al.
 Peter H. Lehner, Asst. Corp. Counsel, Environmental Law Div., New York City (Victor A. Kovner, Corp. Counsel, City of New York, Christopher A. Amato, Susan E. Amron, of counsel), for The City of New York as amicus curiae, in support of appellees.
 Patrick W. Hanifin, Boston, Mass. (Stephen S. Ostrach, New England Legal Foundation, of counsel), filed a brief on behalf of The Connecticut Business and Industry Ass'n as amicus curiae.
 Rena I. Steinzor, Washington, D.C. (David Kolker, Matthew F. Lintner, Spiegel & McDiarmid, of counsel), filed a brief on behalf of American Communities for Cleanup Equity as amicus curiae.
 Paul G. Wallach, Washington, D.C. (Mark Atlas, Bennet L. Heart, Hale and Dorr, Washington, D.C., Jan S. Amundson, General Counsel, Nat. Ass'n of Mfrs., David F. Zoll, Vice President and General Counsel, Dell E. Perelman, Sr. Asst. Gen. Counsel, Chemical Mfrs. Ass'n, G. William Frick, Susan Schmedes, American Petroleum Institute, of counsel), filed a brief on behalf of Nat. Ass'n of Mfrs., Chemical Mfrs. Ass'n, and American Petroleum Institute as amici curiae.
 Julie Harrison, New Haven, Conn. (Mark Mininberg, Mininberg & Associates, Frank B. Cochran, Cooper, Whitney, Cochran & Francois, of counsel), filed a brief on behalf of Joseph Kriz and Trowbridge House Apartments as amicus curiae.
 Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal deals with the disposal of municipal solid waste that contains hazardous substances and as such is one piece of the national environmental problem. The problem is precipitated by the presence of over 200 municipal landfills, comprising about 20 percent of the more than 1,000 sites, that pose sufficient environmental concerns to warrant priority in federal cleanup efforts. See generally Interim Municipal Settlement Policy, 54 Fed.Reg. 51,071 (1989). Whether, when, and at what cost this environmental muddle will be resolved is unknown; but to maintain Congress' comprehensive statutory chain of responsibility it is essential that one step at a time be taken.
 
 
 2
 To take that step on this appeal we must carefully analyze the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Act), 42 U.S.C. § 9601, et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986 (Superfund Amendments), Pub.L. No. 99-499, 100 Stat. 1613 et seq., and while remaining aware of the interaction of CERCLA with other federal environmental statutes--in this case primarily the Resource Conservation and Recovery Act (Resource and Recovery Act or RCRA), 42 U.S.C. § 6901, et seq.--determine what CERCLA defines as hazardous substances, and whether CERCLA imposes liability on a municipality which arranges for the disposal or treatment of municipal solid waste that contains primarily household waste.
 
 BACKGROUND
 
 3
 At the center of this litigation lie the Beacon Heights and Laurel Park landfills, both located in Connecticut, designated as Superfund sites on a National Priority List by the Environmental Protection Agency (EPA). Four actions, now consolidated, were commenced separately in 1987 by the EPA, the State of Connecticut Department of Environmental Protection, Uniroyal Chemical Company, Inc., and a coalition of corporations led by B.F. Goodrich Company (collectively, plaintiffs). Plaintiffs sought reimbursement for past and future cleanup costs from the owners or operators of the landfills, including Terrence and Harold Murtha and their several corporations (collectively, Murtha).
 
 
 4
 In turn, Murtha commenced third-party actions seeking contribution or indemnification and other statutory and common law relief against approximately 200 third-party defendants. Among the third-party defendants are the Connecticut municipal appellants. They include the cities and/or towns of Ansonia, Beacon Falls, Bethany, Hamden, Killingworth, Middlebury, Milford, New Haven, Orange, Plymouth, Seymour, Shelton, Stamford, Stratford, Thomaston, Waterbury, Watertown, Westport, Woodbury, the borough of Naugatuck, the Housing Authorities of New Haven and Watertown, and the Connecticut Resources Recovery Authority.
 
 
 5
 In 1988 the district court permitted plaintiffs to amend their complaints and add the third-party defendants as defendants in the original action. Fundamental to both the original and the third-party actions are the allegations that the municipal defendants arranged for the disposal and/or treatment of hazardous substances at the two landfills and are therefore subject to liability under § 9607 of CERCLA for a share of past and future cleanup costs, now estimated to exceed $47.9 million.
 
 
 6
 After serving answers denying liability, the municipal defendants as a group moved for summary judgment arguing that, as a matter of law, their generation and collection of municipal solid waste did not subject them to liability under CERCLA. The United States District Court for the District of Connecticut (Dorsey, J.) denied this motion in a judgment dated January 8, 1991. B.F. Goodrich Co. v. Murtha, 754 F.Supp. 960 (D.Conn.1991). It held that CERCLA does not contain any exemption for municipal waste, and that the exclusion for household solid waste found in the Resource and Recovery Act is not incorporated into the CERCLA definition of hazardous substances. It held further that a municipality disposing of hazardous substances at a site where there is a release or threatened release of such substances may be liable under § 9607 and that plaintiffs had raised genuine issues of material fact as to whether the municipal defendants' waste contained hazardous substances covered by CERCLA. The municipalities appeal from the judgment denying them summary judgment. We affirm.
 
 DISCUSSION
 
 7
 The focus of our inquiry is the question of municipal liability under CERCLA for arranging for the disposal or treatment of municipal solid waste. Procedurally, we review a denial of appellants' motion for summary judgment; summary judgment may appropriately be granted only if the record demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P.Rule 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). Appellants do not seriously dispute the district court's finding that genuine issues of material fact exist, i.e., that plaintiffs raised a genuine issue, unrefuted by the municipalities, as to the existence of CERCLA-defined hazardous substances in the municipalities' solid waste. See 754 F.Supp. at 968-72. Rather the municipal defendants argue that CERCLA provides plaintiffs no grounds for relief and, as a result, the municipalities are entitled to judgment as a matter of law.
 
 
 8
 At the center of our discussion is the subject of municipal solid waste which, while possibly containing material from commercial and industrial sources, is primarily composed of household waste. See 54 Fed.Reg. at 51,075. Despite the tremendous volume of household waste, surveys generally reveal that it contains very low concentrations--less than 1 percent by weight--of substances the EPA considers hazardous to the environment or to public health. See Ferrey, The Toxic Time Bomb: Municipal Liability for the Cleanup of Hazardous Waste, 57 Geo.Wash.L.Rev. 197, 200-10 (1988). Yet, even though household waste has a low concentration of hazardous substances, when the EPA determines that a cleanup under CERCLA is warranted the costs of cleanup at municipal landfills may be greater than at similar industrial or commercial toxic waste sites due to household waste's greater volume and reduced toxicity. With this in mind, we turn to the statutory framework.
 
 I Statutory Framework Under CERCLA
 
 9
 In CERCLA Congress enacted a broad remedial statute designed to enhance the authority of the EPA to respond effectively and promptly to toxic pollutant spills that threatened the environment and human health. The EPA is authorized to commence "response actions" to abate any actual or threatened releases of hazardous substances, § 9604(a)(1), and a federal Superfund exists to pay for mandated cleanups. Response actions include remedial efforts to prevent or minimize releases as well as attempts to remove hazardous substances entirely. The Act also authorizes the EPA to recover its costs from responsible parties as a means to replenish and maintain the Superfund. See § 9607(a)(4)(A). Alternatively, the EPA may seek to compel potentially responsible parties to commence private response actions if there is an "imminent and substantial endangerment to the public health." § 9606(a). Such parties may recover a portion of their response costs from other potentially responsible parties. § 9613(f).
 
 
 10
 CERCLA imposes strict liability. See Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir.1988); State of New York v. Shore Realty Corp., 759 F.2d 1032, 1042 (2d Cir.1985). Where the environmental harm is indivisible liability is joint and several. See O'Neil v. Picillo, 883 F.2d 176, 178-79 (1st Cir.1989), cert. denied sub nom. American Cyanamid Co. v. O'Neil, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); United States v. R.W. Meyer, Inc., 889 F.2d 1497, 1506-08 (6th Cir.1989), cert. denied, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990). CERCLA establishes four classes of responsible parties liable for the costs of responding to releases or threatened releases of hazardous substances. These include past and present owners or operators of facilities, transporters of hazardous substances, and those, such as appellants, who generate or arrange for the disposal or treatment of hazardous substances. § 9607(a). The Act's broad reach extends liability to all those contributing to--from generation through disposal--the problems caused by hazardous substances.
 
 
 11
 Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals: (1) enabling the EPA to respond efficiently and expeditiously to toxic spills, and (2) holding those parties responsible for the releases liable for the costs of the cleanup. In that way Congress envisioned the EPA's costs would be recouped, the Superfund preserved, and the taxpayers not required to shoulder the financial burden of a nationwide cleanup. See United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1377, 1380 (8th Cir.1989) (quoting Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir.1986)); City of New York v. Exxon Corp., 744 F.Supp. 474, 485 (S.D.N.Y.1990). Potential affirmative defenses are limited to those listed in § 9607(b). See Shore Realty, 759 F.2d at 1048-49; United States v. Hooker Chems. & Plastics Corp., 680 F.Supp. 546, 557-58 (W.D.N.Y.1988). Hence, liability under § 9607(a) is precluded only by a defense that the release or threatened release was caused solely by an act of God, an act of war, or certain acts or omissions of third parties other than those with whom a defendant has a contractual relationship. See § 9607(b). Undeterred by the inapplicability of any of these affirmative defenses to the present case, appellants insist that a municipality may not be held liable under CERCLA, § 9607(a)(3), for arranging for the disposal or treatment of municipal solid waste because that waste is not defined as a hazardous substance under the Act.
 
 
 12
 A prima facie cause of action under CERCLA requires a plaintiff to establish: (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan set up under the Act and administered by the EPA in order to prioritize hazardous substance release sites throughout the nation. See Shore Realty, 759 F.2d at 1043. The municipalities' summary judgment motion turns on whether their arranging for the disposal of municipal solid waste satisfies the first and third elements.
 
 II Responsible Party
 
 13
 As to the first element, it is clear that a municipality may be liable as a potentially responsible party if it arranges for the disposal of hazardous substances. CERCLA expressly includes municipalities, states, and other political subdivisions within its definition of persons who can incur such liability under § 9607. § 9601(21). The Supreme Court has held that the "cascade of plain language" clearly demonstrates Congress aimed to abrogate sovereign immunity for the states. Pennsylvania v. Union Gas Co., 491 U.S. 1, 7-13, 109 S.Ct. 2273, 2277-80, 105 L.Ed.2d 1 (1989). As further evidence of Congress' plan that municipalities be held as responsible parties, CERCLA includes limited exceptions to potential municipal liability. Where, as an "owner or operator," a municipality acquires ownership or control of a facility involuntarily as a result of its sovereign function, § 9601(20)(D), or where a municipality acts in response to an emergency caused by the release of hazardous substances from a facility owned by another party and does not act with gross negligence or willful misconduct, § 9607(d)(2), no liability attaches. These express exceptions to liability are strong evidence that municipalities are otherwise subject to CERCLA liability.
 
 
 14
 In the face of CERCLA's unambiguous scheme concerning municipal liability and the limited exceptions to it, appellants cite Lincoln v. Republic Ecology Corp., 765 F.Supp. 633 (C.D.Cal.1991), apparently for the proposition that liability cannot attach to a municipality that arranges for the disposal or treatment of hazardous substances in its sovereign capacity. We regard Lincoln as merely holding that the city's activities in that case, taken in furtherance of its sovereign function to abate public nuisances, were insufficient to give rise to "arranger" status for purposes of liability under CERCLA. See id. at 636-38. To the extent Lincoln can be construed as extending the "function as a sovereign" exception beyond the liability provision for owners or operators to that for arrangers, we disagree with it. Cf. Union Gas, 491 U.S. at 12-13, 109 S.Ct. at 2280 (§ 9601(20)(D) qualifies entire definition of "owner or operator," not merely the portion thereof applicable to involuntary owners). Congress limited the sovereign function exception to those situations where liability is premised on the state or local government entity being an "owner or operator" of a vessel or facility. See § 9601(20). Nothing in the language of the Act suggests that it be extended.
 
 
 15
 We recognize that liability under the arranger subsection requires a sufficient nexus be present between the municipality and the hazardous substances, one that does not exist in cases where the governmental unit is responsible only for promulgating disposal regulations or for permitting disposal facilities. See United States v. New Castle County, 727 F.Supp. 854, 872-74 (D.Del.1989); State of New York v. City of Johnstown, N.Y., 701 F.Supp. 33, 36 (N.D.N.Y.1988). Nonetheless, once a sufficient nexus is established (such as, in this case, by managing the disposal activities), the reasons prompting the establishment of that nexus are of no consequence. To construe CERCLA as providing an exemption for municipalities arranging for the disposal of municipal solid waste that contains hazardous substances simply because the municipality undertakes such action in furtherance of its sovereign status would create an unwarranted break in the statutory chain of responsibility.
 
 III Hazardous Substance
 A. CERCLA Definition
 
 16
 Since release or threatened release is not here at issue, discussion of the third element--which is the principal subject of this opinion--turns to whether municipal solid waste falls within CERCLA's definition of hazardous substance. We start by reviewing the language of the Act itself, United States v. James, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986), and assume the ordinary meaning of the language used expresses Congress' purpose. American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Unless a clearly expressed legislative aim to the contrary is found, that meaning controls. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).
 
 
 17
 CERCLA defines as hazardous any substance so designated by the EPA pursuant to § 9602 or by any of four other environmental statutes. Section 9601(14) states
 
 
 18
 The term "hazardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act ..., (D) any toxic pollutant listed under section 1317(a) of title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act ..., and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).
 
 
 19
 Pursuant to subsection (B) above and under § 9602, the EPA has listed over 700 hazardous substances in Table 302.4 of 40 C.F.R. § 302. The Act's definition of hazardous substance covers a vast array. A substance need only be designated as hazardous under any one of the four environmental statutes or under Table 302.4 to be a hazardous substance under CERCLA. Courts uniformly have found that the Act does not require a substance to be delineated as hazardous under more than one of the subsections to be so viewed. See, e.g., Eagle-Picher Industries, Inc. v. United States EPA, 759 F.2d 922, 927 (D.C.Cir.1985); United States v. Carolawn Co., 21 E.R.C. 2124, 2125 (D.S.C.1984); United States v. Metate Asbestos Corp., 584 F.Supp. 1143, 1146 (D.Ariz.1984).
 
 
 20
 Other features of § 9601(14) demonstrate its breadth. For example, though Congress specifically excluded from the definition of hazardous substance two substances--natural gas and oil--no other exclusions are found. Nor is any distinction made either among potentially responsible parties or by virtue of the source of the hazardous substances. Whether a potentially responsible party is an owner or operator of a facility, or an arranger, generator or transporter of the hazardous substance, or a municipality, individual or chemical manufacturing company is not relevant in determining whether a substance is hazardous. Where Congress differentiated based on a potentially responsible party's status, it did so directly through specific exemptions such as those for municipalities that acquire title to facilities involuntarily or that act in response to emergencies. See §§ 9601(20)(D), 9607(d)(2).
 
 
 21
 Similarly, the definition makes no distinction dependent upon whether the substance's source was industrial, commercial, municipal or household. Whether the substance is a consumer product, a manufacturing byproduct, or an element of a waste stream is irrelevant. Quantity or concentration is not a factor either; when Congress wanted to draw distinctions based on concentration or quantity, it expressly provided as much. See §§ 9602, 9603. See also, e.g., Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 669 (5th Cir.1989); Exxon Corp., 744 F.Supp. at 485-86 n. 16; United States v. Wade, 577 F.Supp. 1326, 1339-40 (E.D.Pa.1983). When § 9601(14) is compared to sections containing threshold limits found elsewhere in CERCLA, see, e.g., §§ 9602, 9603, and within other environmental statutes, see, e.g., §§ 6903(5), 6921(d) (RCRA sections conditioning regulation applicability on threshold quantity waste generation); 33 U.S.C. §§ 1321(b)(4), 1317(d) (Clean Water Act conditioning liability upon exceeding reportable quantities and effluent standards), it is plain that the definition does not depend on the concentration of the substance present. Thus, the concentration of hazardous substances in municipal solid waste--regardless of how low a percentage--is not relevant in deciding whether CERCLA liability is incurred.
 
 
 22
 Against this backdrop, the municipalities nonetheless contend that CERCLA's silence regarding municipal solid waste is evidence that Congress aimed to have it excluded from the definition of hazardous substances. Alternatively, the municipalities argue that Congress intended an exemption for household hazardous waste found in the Resource and Recovery Act regulations to be incorporated, through § 9601(14)(C), thus excluding municipal solid waste from the definition of hazardous substances under CERCLA.
 
 
 23
 We disagree with both contentions. The Act's silence on the subject of municipal solid waste is not evidence that such should be excluded from the definition of hazardous substances. To the contrary, § 9601(14)'s comprehensive definition of hazardous substances, coupled with the specific exclusions of oil and natural gas, leads to the opposite conclusion. Municipal waste need not be listed by name--instead of its constituent components--to fall within the Act. For us to consider the whole separate from its hazardous constituent parts would be to engage in semantic sophistry. When a mixture or waste solution contains hazardous substances, that mixture is itself hazardous for purposes of determining CERCLA liability. See, e.g., Eagle-Picher, 759 F.2d at 930-31; Exxon Corp., 744 F.Supp. at 483-84; Carolawn, 21 E.R.C. at 2126. Liability under CERCLA depends only on the presence in any form of listed hazardous substances. Hence, if a municipality arranges for the disposal or treatment of waste containing substances listed as hazardous in any of the four identified environmental statutes or in Table 302.4, it may be held liable for contribution or response costs under the Act if a subsequent release or threatened release requires cleanup efforts.
 
 
 24
 B. Resource and Recovery Act Exemption for Household Waste
 
 
 25
 The municipalities strenuously insist further that the exemption for household hazardous waste--promulgated by EPA and subsequently confirmed in part by Congress--from certain regulatory requirements under the Resource and Recovery Act extends, through incorporation by reference, to the definition of hazardous substance under CERCLA. This latter argument, as the former, is not persuasive. The Resource and Recovery Act is designed primarily to regulate on-going treatment, storage, and disposal of solid and hazardous wastes. See Aceto Agric. Chems., 872 F.2d at 1376-77. Pursuant to RCRA, EPA promulgated two distinct regulatory systems for the transportation of wastes and the operation of waste storage and disposal facilities: one for solid wastes (under Subpart D of RCRA, §§ 6941-49a); and the other for hazardous wastes (under Subpart C of RCRA, §§ 6921-39b). Hazardous wastes, identified in 40 C.F.R. §§ 261.30-33, are subject to more stringent standards than are solid wastes.
 
 
 26
 "In regulations identifying and listing hazardous wastes subject to the RCRA Subtitle C regulations, EPA excluded for regulatory purposes certain solid wastes from the definition of hazardous wastes, even though these wastes might otherwise be considered hazardous wastes." Notification of Treatment, Storage and Disposal Facilities, 46 Fed.Reg. 22,144, 22,145 (1981) (emphasis added). The EPA included household wastes, under 40 C.F.R. § 261.4(b)(1), pursuant to Congressional plan, among those wastes excluded from the Resource and Recovery Act's Subpart C hazardous waste regulations. Subsequently, Congress "clarified" the household waste exclusion with respect to resource recovery facility regulations under that Act for the recovery of energy through the mass burning of municipal waste by adding § 3001(i). That section provides that such facilities are not deemed to be handling hazardous wastes if they receive only household waste and other solid waste not containing hazardous waste. § 6921(i). From this statutory exclusion, appellants assert that municipal solid waste cannot be a hazardous waste under CERCLA.
 
 
 27
 The household waste exclusion was promulgated pursuant to a Congressional scheme that such waste not be subjected to the same stringent standards during the day-to-day management of transportation, storage and disposal. The legislative history relied on by the EPA in promulgating the household waste exclusion follows Congress' narrow aim to exclude specific waste streams from Resource and Recovery Act coverage. See, e.g., Identification and Listing of Hazardous Waste, 45 Fed.Reg. 33,084, 33,099 (1980); Hazardous Waste Guidelines and Regulations, 43 Fed.Reg. 58,946, 58,969 (1978); S.Rep. No. 988, 94th Cong., 2d Sess. 15-16 (1976). The subsequent "clarification," already referred to, was passed four years after CERCLA's enactment. It applies only to resource recovery facilities. § 6921(i); see also H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 106 (1984), reprinted in 1984 U.S.Code Cong. & Admin.News 5576, 5649, 5677; S.Rep. No. 284, 98th Cong., 2d Sess. 61 (1983). This narrow RCRA exemption in no way limits the definition of hazardous substance under CERCLA. The EPA expressly recognized the exemption's limited scope when it stated that the exempted "[solid] wastes might otherwise be considered hazardous wastes." 46 Fed.Reg. at 22,145. To construe this exemption to apply also to CERCLA would frustrate that Act's broad remedial purposes as well as unjustifiably expand the scope of the Resource and Recovery Act's regulations.
 
 
 28
 Congress and the EPA have carefully distinguished between wastes, to which the Resource and Recovery Act applies, and substances, to which CERCLA applies. See, e.g., §§ 6901 et seq. (particularly § 6903(5)); §§ 9601 et seq. (particularly § 9601(14)); S.Rep. No. 988, 94th Cong., 2d Sess. 15-16 (1976); 40 C.F.R. § 261. (4)(b); 46 Fed.Reg. at 22,145; EPA Directive Number 9574.00-1 Clarification of Issues Pertaining to Household Hazardous Waste Collection Programs (Nov. 1, 1988) (EPA Directive 9574.00-1); 54 Fed.Reg. at 51,073; see also United States v. Conservation Chem. Co., 619 F.Supp. 162, 239 (W.D.Mo.1985). It may be seen therefore that the exemption which appellants urge should be extended to CERCLA applies to household waste. CERCLA, though, applies to hazardous substances. This statutory and regulatory distinction is a substantial one and should be preserved, absent a clear legislative intent to the contrary.
 
 
 29
 In addition, application of the Resource and Recovery Act's regulations turns in part upon threshold quantity or concentration requirements--considerations which are irrelevant in defining hazardous substances under CERCLA. RCRA contains, for example, a small quantity generator exemption that imposes more stringent Subpart C regulations upon persons generating in excess of threshold quantities. See § 6921(d). The household hazardous waste exemption is consistent with this strategy because the concentration of hazardous waste is small relative to the total volume of household waste. 54 Fed.Reg. at 51,074. On the other hand, incorporating such a concentration/toxicity exemption into CERCLA is not consistent with CERCLA provisions that impose liability--when a release occurs that warrants a cleanup response--regardless of the amount of hazardous substances present.
 
 
 30
 Nor does including wastes that are not subject to the stringent Subpart C regulations under the Resource and Recovery Act within the definition of hazardous substances under CERCLA create a conflict between the two statutes. Subpart C imposes tough standards for operating active toxic waste sites, but does not cover sites operated prior to its enactment, nor sites where the owner is unknown or bankrupt, nor does it address spills, illegal dumping or releases generally. RCRA is preventative; CERCLA is curative. It does not follow that because the environmental risk posed by household waste is deemed insufficient to justify the most stringent regulations governing its day-to-day handling that the environmental harm caused when that risk is realized is insufficient to require holding liable those responsible for that harm. In fact, the EPA expressly recommended that household waste, though exempt from subtitle C regulations, should be managed as a hazardous waste. EPA Directive 9574.00-1 at p. 2. The agency has also noted that the additional safeguards of management under Subpart C regulations merely reduce the likelihood of liability arising under CERCLA. See id. See also Solid Waste Disposal Facility Criteria, 56 Fed.Reg. 50,978 (1991) (to be codified at 40 C.F.R. pts. 257, 258) (final rule creating new criteria, more stringent than Subpart D but less stringent than Subpart C, for municipal solid waste landfills). Even total compliance with Subpart C regulations will not prevent releases or avoid CERCLA liability. Similarly, the increased likelihood of a release occurring pursuant to Subpart D regulations does not necessarily suggest a proportional increased likelihood that a response will be warranted under CERCLA, because of the small concentrations of hazardous substances found in wastes regulated under that Subpart.
 
 
 31
 Other courts have concluded that exemptions from Resource and Recovery Act coverage do not extend so far as to exclude those materials from the definition of hazardous substances under CERCLA. See, e.g., Eagle-Picher, 759 F.2d at 927 (exclusion in § 9601(14)(C) for material suspended from RCRA regulation by Congress restricted in application to that subsection). We agree that had Congress aimed to exempt such materials from § 9601(14) it could have placed the exemption explicitly in the section exactly as it did with petroleum and natural gas. See id.; see also State of Idaho v. Hanna Mining Co., 699 F.Supp. 827, 833 (D.Idaho 1987), aff'd, 882 F.2d 392 (9th Cir.1989); Metate Asbestos Corp., 584 F.Supp. at 1147 (asbestos mill and mine wastes statutorily exempt from RCRA are hazardous substances under CERCLA, §§ 9601(14)(D), (E)); Transportation Leasing Co. v. California, 32 E.R.C. 1499, 1501, 1990 WL 300777 (C.D.Cal.1990) (RCRA exemption for household waste does not extend to the CERCLA definition for hazardous substances). Where a substance is not exempted from the definition of hazardous substance set forth in CERCLA, but merely is exempted from regulation under a separate statute, we decline to incorporate the exemption into § 9601(14). A regulatory exemption cannot take precedence over Congress' concerns spelled out in § 9601(14) of the Act.
 
 
 32
 Finally, the municipalities point to § 9603(c) of CERCLA as supporting their argument that Congress sought to exclude municipal solid waste comprised primarily of household waste from § 9601(14). Section 9603(c) sets forth notification requirements regarding solid waste storage, disposal, and treatment facilities, but expressly limits those requirements to facilities "at which hazardous substances (as defined in section 9601(14)(C) of this title ) are or have been stored" (emphasis added). The municipalities assert that the EPA excluded household waste from its notification requirements because the agency recognized that household waste is exempt from CERCLA in its entirety.
 
 
 33
 Quite the contrary, the EPA recognized that its notification requirements pursuant to § 9603(c) could apply, according to Congress' mandate, only to those hazardous substances identified under § 9601(14)(C). See 46 Fed.Reg. at 22,145 ("Section [9601(14)(C) ] of the Act refers only to those hazardous substances that are hazardous wastes identified under or listed pursuant to Section 3001 of RCRA"). Hence, the agency realized that Congress expressly planned that the identification of substances as hazardous under the other subsections of § 9601(14) would not be affected by a contrary determination under RCRA. Contrary to the municipalities' argument, the EPA's exemption of household wastes from notification requirements under CERCLA does not suggest that disparate treatment of municipal solid waste under the Act's liability provisions is appropriate.
 
 C. Legislative History
 
 34
 Although appellants recognize that the legislative history discussing municipal waste is meager, they contend that combined with legislative debate regarding the general aim of CERCLA, the history evinces such a clearly expressed legislative purpose, see Consumer Product Safety Commission, 447 U.S. at 108, 100 S.Ct. at 2056, that we should disregard the apparently contrary language of the Act itself. In this regard the municipalities rely heavily upon statements by Rep. Stockman, who, in opposition to H.R. 7020 (a bill offered as an amendment to the Resource and Recovery Act, which was superseded when the Senate bill, S.1480, was ultimately enacted separately as CERCLA) criticized the unrestrained and unlimited powers the bill would delegate to the EPA and the number of items the Resource and Recovery Act would consider hazardous. 126 Cong.Rec. H9438-41 (Sept. 23, 1980). Rep. Stockman's own proposed amendment to the bill was eventually rejected by the House of Representatives, and most responses to his criticism focused on the powers of the EPA and the envisioned relationship between the state and federal governments. See, e.g., 126 Cong.Rec. H9440-49 (Sept. 23, 1980) (statements of Reps. Florio, Gore, and Madigan).
 
 
 35
 Claiming that Congress agreed with Congressman Stockman's remarks, appellants urge that the bill actually passed did not envision such a broad scope as to include household wastes among hazardous substances. Yet, much of the legislator's criticism and the House's reaction to it is irrelevant in this case because it was directed towards the Resource and Recovery Act and not CERCLA. Congressman Stockman correctly understood that household waste may be exempt from coverage under the Resource and Recovery Act and that the toxic spill cleanup amendments, which he proposed changing, failed to include the same exemption; it is those amendments that were eventually enacted into CERCLA. See Dissenting Views, Comm. on Interstate and Foreign Commerce, H.R.Rep. No. 1016, 96th Cong., 2d Sess., pt. 1, 72 (1980), reprinted in 1980 U.S.Code Cong. & Admin.News 6119, 6148; see also 126 Cong.Rec. H9443 (Sept. 23, 1990) (statement of Rep. Florio, in response to Rep. Stockman, reading a letter from the National Conference of State Legislatures and the National Governors' Association agreeing that, "in order to allow recovery of Superfund expenditures and to provide an incentive for proper care to all parties connected with hazardous waste, all major Superfund bills contain rigorous liability provisions.... [The] NCSL and NGA support the applications of liability schemes to all parties, including states and localities when circumstances merit. No one disputes the principle that those who contribute to the problem should share in the cost of cleanup. Imposition of a comprehensive liability provision will assure that this principle is observed") (emphasis added).
 
 
 36
 Examination of the legislative history reveals no further discussion relating to whether municipal solid waste could trigger liability under CERCLA. Rather, most of the debate upon which the municipalities would have us rely focused on Congress' scheme to hold the parties responsible for releases liable for the ensuing cleanup costs, and not taxpayers generally. See, e.g., 126 Cong.Rec. H9162 (Sept. 19, 1980) (statement of Rep. Florio); id. at H9157 (statement of Rep. Carter); 126 Cong.Rec. S15,003 (Nov. 24, 1980) (statement of Sen. Leahy); H.R.Rep. No. 1016, 96th Cong., 2d Sess., pt. II, pp. 5, 33 (1980), reprinted in 1980 U.S.Code Cong. & Admin.News 6151, 6153; S.Rep. No. 848, 96th Cong., 2d Sess. 13, 98 (1980).
 
 
 37
 Appellants apparently believe this notion that "the responsible party pays" excludes situations where the responsible party happens to be a municipality disposing of solid waste. To impose CERCLA liability on these local governments results, appellants continue, in taxpayers within their jurisdictions shouldering the costs of cleanup. We agree that this will inevitably be the result, but are unable to agree that it is adverse to Congress' aim. To the contrary, a narrow interpretation of CERCLA that exempts municipalities arranging for the disposal of municipal solid waste from liability increases the probability that cleanup costs will never be recovered, and will be paid instead from the Superfund funded in part by the taxpayers at large. To accept the municipalities' argument that the municipal waste exemption in the Resource and Recovery Act should apply to CERCLA would free a potentially responsible party from liability, in blatant contravention of the statute's goals.
 
 
 38
 Although municipalities do not benefit in a proprietary sense from arranging for the disposal of municipal solid waste, their taxpayers do obtain a benefit--given the necessity of disposal of such waste. Thus, our refusal to exempt such waste from the definition of hazardous substance under CERCLA cannot be said to create an irrational and clearly unintended result. See United States v. Rutherford, 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979). On this question, review of the legislative history reveals a picture more confusing than pellucid, and a Congressional purpose not so discernible that it should cause us to depart from the plain meaning of § 9601(14).
 
 D. EPA Interpretation
 
 39
 The municipalities next argue that the EPA interprets CERCLA to impose no liability on municipalities arranging for the disposal of municipal refuse containing primarily household wastes. The EPA, they state, has created in a policy notice a "rebuttable presumption that generation and transportation of municipal solid waste and domestic sewage sludge would not be deemed to incur CERCLA liability." We concede that a court should defer to EPA's reasonable construction of CERCLA, absent a clearly expressed contrary Congressional purpose. See, e.g., Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). EPA's interpretation of CERCLA, as the agency charged with its administration, will be followed so long as it " 'is based on a permissible construction of the statute' " and " 'there are [not] compelling indications that it is wrong.' " Weeks v. Quinlan, 838 F.2d 41, 43-44 (2d Cir.1988). Thus, to be accorded deference, EPA's construction of CERCLA need not be one we would have chosen, nor the only reasonable one permitted by the Act's language. See, e.g., Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11.
 
 
 40
 We do not dispute appellants' characterization of how EPA's interpretation should be treated. Rather, we disagree with appellants' characterization of EPA's interpretation itself. Here, in fact, the EPA interprets CERCLA to impose liability on municipalities arranging for the disposal of municipal waste at sites that release or threaten the release of hazardous substances. Appellants' view of the EPA's pronouncements on the issue is more wish than reality, especially in light of the EPA's opposition to appellants' arguments in the district court.
 
 
 41
 In taking this somewhat disingenuous position, the municipalities primarily rely on the agency's Interim Municipal Settlement Policy, which was intended "to provide interim guidance to EPA Regional offices on how they should exercise their enforcement discretion." 54 Fed.Reg. at 51,071. Yet, decisions regarding enforcement discretion, which must reflect limited agency resources, enforcement priorities and other administrative constraints, do not necessarily mirror the liability scheme imposed by CERCLA. The statute does not forbid the EPA from selectively prosecuting only the major contributors to a hazardous response site. In exercising its enforcement discretion the agency routinely prosecutes only the largest contributors, or those with the greatest means to pay for the cleanup response costs, and leaves those defendants to seek, through third-party actions, contribution from any other liable polluters. The Interim Municipal Settlement Policy merely indicates that the EPA presently does not intend to pursue enforcement actions against municipalities generating or transporting municipal waste--regardless of whether hazardous substances are present--unless the total privately generated commercial hazardous substances are insignificant compared to the municipal waste. Id. at 51,072.
 
 
 42
 Moreover, there is no room for confusion as to the limited implications of EPA's prosecutorial position. The Interim Municipal Settlement Policy expressly warns, "[n]othing in the interim policy affects any party's potential legal liability under CERCLA ... [N]othing in the interim policy precludes a third party from initiating a contribution action." Id. at 51,071 (emphasis added). In a similar vein, the notice states that CERCLA "does not provide an exemption from liability for municipalities ... [T]he statute does not provide an exemption from liability for municipal wastes." Id. at 51,074. In order to eliminate any lingering doubt regarding the EPA's interpretation of CERCLA, the agency states "[t]o the extent municipal wastes contain a hazardous substance that is covered under section 101(14) of CERCLA and there is a release or threatened release, such municipal wastes may fall within the CERCLA liability framework." Id.
 
 
 43
 Other EPA pronouncements point out its unambiguous position and provide strong support for the argument that it does not believe Congress planned for municipal waste to be exempt from CERCLA. See, e.g., EPA Directive 9574.00-1 at p. 2; EPA Note to Correspondents (July 17, 1991) (announcing that EPA will help develop guidelines for determining superfund liability for municipalities whose MSW contributed to a release or threatened release); Address by EPA Administrator William Reilly to National Association of Counties (July 16, 1991) (same); Statement of EPA Assistant Administrator for Solid Waste and Emergency Response Don R. Clay (July 29, 1991) (interim municipal settlement policy "describes [EPA's] exercise of enforcement discretion, not an interpretation of liability"). We conclude consequently that the EPA emphatically construes CERCLA to impose liability on municipalities disposing of household waste that contains hazardous substances.
 
 CONCLUSION
 
 44
 Plaintiffs have sufficiently established a prima facie cause of action under CERCLA, including the first and third elements challenged by the appellants on this appeal. We are aware that holding the municipal defendants as responsible parties and including municipal solid waste within the definition of hazardous substances will have far reaching implications for municipalities and their taxpayers. But burdensome consequences are not sufficient grounds to judicially graft an exemption onto a statute, a graft that would thwart the language, purpose, and agency interpretation of the statute.
 
 
 45
 Appellant municipalities are not without recourse to avoid inequitable and disproportionate burdens that may arise from their liability as third-party contributors. Courts have the authority to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." § 9613(f)(1). An array of equitable factors may be considered in this allocation process, including the relative volume and toxicity of the substances for disposal of which the municipalities arranged, the relative cleanup costs incurred as a result of these wastes, the degree of care exercised by each party with respect to the hazardous substances, and the financial resources of the parties involved. Consequently, the amount of liability imposed will not necessarily be a function solely of the total volume of municipal waste disposed of in the landfills, but rather will be a function of the extent to which municipal dumping of hazardous substances both engendered the necessity, and contributed to the costs, of cleanup.
 
 
 46
 In sum, the plain meaning of CERCLA, its stated purposes, the absence of a clearly expressed Congressional aim to the contrary, and unequivocal agency policy support the view that the municipal defendants are responsible parties under the Act and that the definition of hazardous substance under CERCLA includes municipal solid waste if that waste contains a hazardous substance, found in any amount, that is listed in any of the subsections of § 9601(14). The municipal defendants are not entitled to summary judgment as a matter of law declaring otherwise.
 
 
 47
 The judgment is affirmed.