**PFOHL BROTHERS LANDFILL SITE STEERING COMMITTEE, Plaintiff,**

v.

**BROWNING–FERRIS INDUSTRIES OF NEW YORK, INC., Allied Waste Systems, Inc. and GSX Polymers, Inc., Defendants.**

No. 95–CV–956A(F).

United States District Court,
W.D. New York.

Aug. 12, 2002.

Stephens & Stephens, Buffalo, NY (R. Williams Stephens, of Counsel), Beveridge & Diamond, P.C., Washington, DC (James B. Slaughter, Gary J. Smith and Daniel M. Krainin, of Counsel), for Plaintiff.

Webster, Szanyi, LLP, Buffalo, NY (Nelson Perel and A. Timothy Webster, of Counsel), for Defendants Allied Waste Systems, Inc. and GSX Polymers, Inc.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

This case was referred to the undersigned by Honorable Richard J. Arcara on February 9, 1996, for pretrial matters. The matter is presently before the court on Defendants' motion filed June 29, 2001 to exclude Plaintiff's expert witness report (Docket No. 199).

Plaintiff Pfohl Brothers Landfill Site Steering Committee commenced this contribution action on November 7, 1995, pursuant to the Comprehensive Environmental Response, Compensation, and Liability

Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking to recover from defendants Allied Waste Systems, Inc. and GSX Polymers, Inc. (collectively, "Defendants"), a portion of the costs Plaintiff voluntarily incurred in connection with the removal of various hazardous substances from a landfill ("the Landfill"), located in the town of Cheektowaga, New York. On May 15, 2001, Plaintiff and Defendants filed motions for summary judgment and supporting papers. Among the exhibits Plaintiff filed in support of summary judgment is the Expert Report of Gary R. Hamed, Ph.D. ("Plaintiff's Expert Witness Report") (Plaintiff's Exhibit 9).

On June 29, 2001, Defendants filed a motion to exclude Plaintiff's Expert Witness Report, accompanied by a Memorandum of Law ("Defendants' Memorandum") and the Affidavit of Attorney Nelson Perel. On June 3, 2002, Plaintiff filed a memorandum of law in opposition to the motion to exclude (Docket No. 231) ("Plaintiff's Response Memorandum") and, on June 13, 2002, Defendants filed a memorandum of law in further support of the motion to exclude (Docket No. 233) ("Defendants' Reply Memorandum"). Oral argument on the motion was deemed unnecessary.

For the following reasons, Defendants' motion is DENIED.

Defendants take particular issue with the fact that despite Dr. Hamed's formal education in rubber technology and adhesives, his employment as a researcher with Firestone Tire Company and as a college professor of polymer sciences at the University of Akron, Dr. Hamed has no direct experience with rubber reclaiming and environmental matters. Defendants' Memorandum at 3. Rather, Dr. Hamed's knowledge of those subjects comes from secondary sources including books. *Id.* Defendants also assert that Plaintiff's Expert Witness Report was prepared without Dr. Hamed ever visiting the Landfill or conducting any actual testing of the material deposited there. As such, Defendants maintain that Dr. Hamed is unqualified to opine as to whether CERCLA hazardous substances were contained in the waste generated by U.S. Rubber and whether such substances were leached out of the waste and into the Landfill's environment given his lack of experience with soil and the environment. *Id.* at 1, 17–23.

Plaintiff argues in opposition that Defendants' challenge to Plaintiff's Expert Witness Report that Dr. Hamed's background in the chemistry of rubber and other polymers renders him well-qualified to express his opinion as to what hazardous substances were contained within U.S. Rubber's waste. Plaintiff's Response Memorandum at 1. Plaintiff also assert that Defendants have confused the notion of whether a particular waste product contains a substance considered hazardous under CERCLA with the releasability of such substance. *Id.* at 19.

Whether an expert's opinion is admissible at trial depends on (1) the expert's qualifications to give the opinion; (2) the reliability of the expert opinion; and (3) the "fit" of the opinion, *i.e.*, its relevance to the issue for which it is asserted. Fed. R.Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In the instant case, Dr. Hamed's report satisfies these three requirements.

First, Dr. Hamed's extensive background in the chemistry of rubber and polymers, including his research work at a major tire company, qualifies him to opine as to the chemical make-up of a particular rubber product, including tires. Second, nothing in the record calls into question the reliability of Dr. Hamed's opinion. That Dr. Hamed never visited the Landfill to obtain samples for testing is of no im-

pact because he was not required to do so. *Betkoski, supra,* at 524. Nor is it necessary that a specific mixture or waste solution be included on CERCLA's list of hazardous substances, *i.e.,* 42 U.S.C. § 9601(14) to fall within CERCLA's coverage. *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 515 (2d Cir.1996). Rather, " '[w]hen a mixture or waste solution contains hazardous substances, that mixture is itself hazardous for purposes of determining CERCLA liability. Liability under CERCLA depends only on the presence in any form of listed hazardous substances.' " *Id.* (quoting *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1201 (2d Cir.1992)).

■ Finally, Dr. Hamed's expert opinion is relevant to the issue before the court on summary judgment, *i.e.,* whether U.S. Rubber's waste stream contained materials that qualified as hazardous under CERCLA. Much of Defendants' argument in support of the motion to exclude challenges not whether the waste U.S. Rubber generated and deposited into the Landfill contained substances considered hazardous under CERCLA but, rather, the releasability of such toxic substances. Defendants' Memorandum at 4–5, 17–23; Defendants' Reply Memorandum at 2–4, 5–10. This is significant as whether a substance's hazardous components are "releasable" in a given environment involves a different inquiry than whether a particular substance contains a hazardous component such that the substance's presence in the Landfill qualifies as a "release, or threatened release ... of a hazardous substance" as required to make out a prima facie case for CERCLA liability under 42 U.S.C. § 9607(a). Specifically, while

> [i]ndependent releasability is not required to establish liability ... a defendant otherwise liable may show 'nonreleasability' in order to mitigate its share of damages. It follows logically that a defendant who disposes of hazardous

substances that are not independently releasable may still be held liable, even though that defendant may not be required to pay damages when the cost apportionment phase of the litigation is reached.

*Betkoski, supra,* at 516–17.

Defendants' challenge that Dr. Hamed's report does not address the releasability of a particular hazardous component, Defendants' Memorandum at 17–23, thus is irrelevant to whether CERCLA liability as a generator of waste containing hazardous substances exists and, instead, pertains only to allocation of liability. *Betkoski, supra,* at 524.

Significantly, Defendants have not produced any evidence establishing the absence of any CERCLA denominated hazardous substance within any of U.S. Rubber's waste streams. In fact, Defendants' expert, Ian Webber, Ph.D., attempts to rebut Dr. Hamed's report on procedural and methodological grounds, rather than by attacking any of its substantive findings. *See* Expert Report of Ian Webber, Ph.D., *passim* (Defendants' Ex. 64).

Based on the foregoing, and for the reasons found in Plaintiff's Response Memorandum, Defendants' motion to exclude the Expert Witness Report of Gary R. Hamed, Ph.D. (Docket No. 199), is DENIED.

SO ORDERED.