**Filomena PRISCO, Individually and as Administratrix of the Goods, Chattels, and Credits of Thomas Prisco, Deceased, Plaintiff,**

**v.**

**The STATE OF NEW YORK; New York State Department of Environmental Conservation; Thomas C. Jorling, as Commissioner of the New York State Department of Environmental Conservation; State of New York Organized Crime Task Force; John M. Murray and**

William E. Bubenicek, as employees of Division of Law Enforcement, Bureau of Environmental Conservation Investigation, New York State Department of Environmental Conservation; New York State Police; Thomas A. Constantine, as Superintendent of New York State Police; Lloyd F. Ward, as an employee of the New York State Police; James La-Bate; Angelo Anthony Calvello; A–1 Carting, Inc.; A–1 Compaction Corp.; A–1 Compaction, Inc.; Greene Refuse Service; A & D Carting Corp.; A.F.C. Transfer Corp.; American Disposal Services, Inc.; Black Meadow Construction, Inc.; John Danna & Sons, Inc.; Gun Hill Trucking, Ltd.; Suburban Carting Corp.; Nyconn Waste Disposal; Tri-County Disposal, Inc.; Stamford Wrecking Company; Finne Bros. Refuse Systems, Inc.; Tiger Recycling, Inc.; Anthony Moreno; Moreno Bulk Haulage; SC-ND Construction Co., Inc.; LSC Trucking Corp.; DeCostole Carting, Inc.; Kristal Papers, Ltd.; Karnak Inc.; Best Container Service, Inc.; Montauk Enterprises; G & A Sand and Gravel, Inc.; Mill Basin Construction Corp.; Garan Carting Co., Inc.; Stevens Trucking, Inc.; Top Job Sanitation Co., Inc.; Cross Bay Contracting Corp. and Consumer Transfer Trucking, Defendants.

No. 91 Civ. 3990 (RLC).

United States District Court,
S.D. New York.

Oct. 11, 1995.

**404**

Reardon & Sclafani, P.C. (Michael V. Sclafani, of counsel), Yonkers, New York, for Plaintiff Filomena Prisco.

Dennis C. Vacco Attorney General of the State of New York (Phyllis Arnold, H. Johannes Galley, Gregory J. Nolan, of counsel), New York City, for New York State Defendants Environmental Protection Bureau.

## OPINION

ROBERT L. CARTER, District Judge.

### Preliminary Statement

Plaintiffs Filomena and Thomas Prisco instituted this action against the state of New York, various state agencies and officials, and certain private defendants for alleged violations of state and federal environmental statutes, federal due process rights, and state common law. The Priscos[1] seek declaratory and injunctive relief and monetary damages. For further procedural history see *Prisco v. N.Y.*, 902 F.Supp. 374 (S.D.N.Y.1995) (Carter, J.); *Prisco v. N.Y.*, No. 91 Civ. 3990, 1994 WL 114818 (S.D.N.Y. Mar. 25, 1994) (Buchwald, J.); *Prisco v. N.Y.*, 804 F.Supp. 518 (S.D.N.Y.1992) (Carter, J.); *Prisco v. N.Y.*, No. 91 Civ. 3990, 1992 WL 88165 (S.D.N.Y. Apr. 22, 1992) (Carter, J.).

Presently before the court is a motion by state defendants[2] for summary judgment on plaintiff's claims under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (1995) ("CERCLA"), the Resource Conservation

and Recovery Act, 42 U.S.C. § 6972 *et seq.* (1995) ("RCRA"), and the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (1986) ("CWA"), combined with a motion to dismiss plaintiff's claims under 42 U.S.C. § 1983.[3] Defendants also move to strike all allegations in the complaint alleging a right to recover personal injury and punitive damages, and they move to strike plaintiff's demand for a jury trial. Plaintiff cross-moves for summary judgment on her claims under CERCLA, RCRA, and CWA. Plaintiff further moves for an order declaring defendants jointly and severally liable for all future response costs to be incurred in the permanent remedial closure of the Prisco site. Finally, plaintiff cross-moves for the impaneling of an advisory jury.

The court's opinion of September 13, 1995 sets forth in detail the facts that gave rise to this action; they will not be repeated here. *See Prisco*, 902 F.Supp. at 379–81.

### Legal Standards

■ Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. For the purposes of a summary judgment motion, the court must view all evidence submitted in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the court must resolve all doubts, ambiguities, and inferences in favor of the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The court must determine whether there is then sufficient

---

1. Thomas Prisco has passed away since the commencement of the action. Filomena Prisco, as administratrix of his estate, has moved successfully for an order substituting herself in place and stead of Thomas Prisco. *See Prisco v. State of N.Y.*, 91 Civ. 3990, 1994 WL 114818 (S.D.N.Y. Mar. 25, 1994) (Buchwald, J.).

2. The term "state defendants" is used throughout to denote the state of New York and various

agencies (sued under CERCLA) and individual state officials (sued under CERCLA, RCRA, CWA, and 42 U.S.C. § 1983).

3. Similar motions by the private defendants were disposed of in *Prisco*, 902 F.Supp. 374. The present opinion addresses only motions by the state defendants and plaintiffs' cross-motions against them.

evidence to allow a reasonable jury to find in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complaint may be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6), F.R.Civ.P., only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In addressing a defendant's arguments under a motion to dismiss, the court must accept all allegations in the complaint as true and draw all inferences in favor of the plaintiff. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Granat v. Center Art Galleries–Hawaii, Inc.,* No. 91 Civ. 7252, 1993 WL 403977, at *2 (S.D.N.Y. Oct. 6, 1993) (Carter, J).

### I. CERCLA

CERCLA was designed, generally, to ensure "that the persons who bore the fruits of hazardous waste disposal also bear the costs of cleaning it up." *United States v. Northeastern Pharmaceutical & Chem. Co.,* 579 F.Supp. 823, 848 (W.D.Mo.1984), *aff'd in part, rev'd in part on other grounds,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). The statute is to be construed broadly in order to accomplish Congressional intent. *General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 285 (2d Cir.1992); *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992). Defendants in CERCLA actions are held to a strict liability standard. *Murtha,* 958 F.2d at 1198; *3550 Stevens Creek Assocs. v. Barclays Bank,* 915 F.2d 1355, 1357 (9th Cir.1990), *cert. denied,* 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991).

Plaintiff requests a declaratory judgment, pursuant to 42 U.S.C. § 9607(a)(4)(B), declaring defendants jointly and severally liable for all future response costs to be incurred in the permanent remedial closure of the Prisco site. "Numerous courts have entertained claims for declaratory judgment as to liability for future response costs under section 9607 of CERCLA." *Arawana Mills Co. v. United Technologies Corp.,* 795 F.Supp. 1238, 1247 (D.Conn.1992) (citing cases). In *Arawana Mills,* the district court concluded that

[i]nasmuch as plaintiff has alleged that there was a release of hazardous substances on the Property during the time defendants operated the overhauling and servicing facility, plaintiff has alleged "the occurrence of the essential facts establishing its right to a declaratory judgment."

*Arawana Mills Co.,* 795 F.Supp. at 1247 (citation omitted). This court granted plaintiff's motion with regard to private defendants, finding that "[t]he Priscos have ... alleged the occurrence of the essential facts establishing their right to a declaratory judgment." *Prisco,* 902 F.Supp. at 392. The same holds true with regard to the state defendants: plaintiff has claimed that there was a release of hazardous substances on her property during the time that it was allegedly under state control. Therefore, the right to declaratory relief for future response costs under CERCLA is extended to include state defendants.

Plaintiff also moves for summary judgment on her CERCLA claims. In order to prevail, plaintiff must establish each of the elements of a prima facie cause of action under the statute: she must show that

(1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility [under § 9601(9) ]; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan set up under the Act and administered by the EPA [Environmental Protection Agency]....

*Murtha,* 958 F.2d at 1198. The court has already determined that plaintiff has met her burden under the second, third, and fourth elements. *Prisco,* 902 F.Supp. at 381–86. Because a genuine issue of material fact exists concerning the fifth element, *id.,* 902 F.Supp. at 387–88, plaintiff's cross-motion for

summary judgment against state defendants on the CERCLA claims is hereby denied.

■ State defendants move for summary judgment on plaintiff's CERCLA claims as well, arguing that plaintiff has failed to raise a genuine issue of material fact over whether the state is a "covered party" as defined by the statute. Plaintiff claims that the state is an operator of the Prisco facility, and thus fits into the "owner or operator" category of "covered persons" under the statute, 42 U.S.C. § 9607(a) (1995). An owner or operator, for CERCLA purposes, is "any person owning or operating [a] facility ..." 42 U.S.C. § 9601(20)(A) (1995). In the absence of a substantive statutory definition, courts have given the phrase "owner and operator" a liberal interpretation. *Stilloe v. Almy Bros.,* 759 F.Supp. 95, 100 (N.D.N.Y.1991); *C.P.C. Int'l, Inc. v. Aerojet–Gen. Corp.,* 731 F.Supp. 783, 788 (W.D.Mich.1989). "The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution." *C.P.C. Int'l,* 731 F.Supp. at 788. The question for the court, then, is "at what point does involvement or control become so pervasive or significant as to warrant the imposition of CERCLA liability." *FMC Corp. v. United States Dept. of Commerce,* No. 90 Civ. 1761, 1990 WL 102941, at *4 (E.D.Pa. July 18, 1990).

Plaintiff alleges that the state was an operator of the Prisco site not in its landfill operations *per se,* but by virtue of the "sting" operation she claims the state had established through its employees William Bubenicek and Lloyd Ward. Plaintiff contends that Bubenicek and Ward acted on behalf of the state and in their capacity as state employees when they used the Prisco site to gather information about organized crime involvement in the waste hauling industry. The state incurred CERCLA liability for Bubenicek's and Ward's activities, plaintiff argues, under the theories of ratification, apparent authority, actual authority, and respondeat superior.

The court has previously set forth the standard plaintiff must meet to prove CERCLA liability under the ratification theory: the state is liable as an operator of the Prisco site if the state possessed material knowledge through its officers of Bubenicek and Ward's activities and received benefits from them, or, alternatively, if state authorities knew about environmental violations at the site and delayed in closing it down because of the informant activities. *Prisco,* 804 F.Supp. at 523–24.

■ The first question, then, is whether plaintiff has advanced sufficient evidence to raise a genuine issue of fact as to whether state officials possessed material knowledge of the site's operations. Defendants argue that there is no basis in the record for a finding that state officials of sufficient authority knew the requisite facts. They contend that the material knowledge necessary to fulfill this requirement includes the awareness that Bubenicek and Ward were operating a for-profit landfill operation on the Prisco site.

Defendants' assertions are misleading. To establish a genuine issue of fact as to ratification, plaintiff need not proffer evidence that state officials had material knowledge that their employees were running and pocketing the profits of a landfill facility. She must merely put forward evidence that Bubenicek and Ward were engaged in activities giving rise to CERCLA liability—that they exercised sufficient control over the facility to qualify as "operators"—and that state officials were aware of and sanctioned this behavior.

■ Prisco has met this burden. She argues that Bubenicek and Ward had in fact established a "sting" operation in their official capacities, and that state officials were aware of it. In support of this argument, she points to evidence in the record that indicates an awareness at high levels of state interest in the operation of the Prisco site. In the summer or fall of 1987, Department of Environmental Conservation (DEC) Regional Attorney Judith Ferry was told by Bubenicek "that the B.E.C.I. Unit expected to be developing an undercover investigation" at the Prisco site. Deposition of Judith Ferry, Mar. 23, 1993, at 23. Regional Director Paul Keller was also informed of this fact. *Id.* at

24. Keller met with Bubenicek and his immediate supervisor, John Michael Murray, in September, 1987, concerning the Prisco site. Deposition of Paul Keller, Dec. 15, 1992, at 159. Murray was aware of Bubenicek's activities and Ward's involvement in the Prisco site. Deposition of John Michael Murray, Oct. 26, 1993, at 107. Furthermore, Bubenicek introduced Ward to Thomas Prisco only after consultation with his superiors. *See* Memorandum of Capt. William Bubenicek (Pl.Ex. 1).[4]

█ Resolving all inferences in favor of plaintiff for the purposes of this summary judgment motion, I find that a reasonable jury could conclude that the state, through its officials, had material knowledge of a "sting" operation run by its employees Bubenicek and Ward on the Prisco site.[5] Plaintiff has thus met her burden for proving CERCLA liability under the first prong of the ratification theory.

█ Plaintiff likewise offers sufficient evidence to support her claims that the state benefitted from information gathered by state employees from the Prisco site. Defendants do not dispute that valuable informa-tion was flowing from the Prisco site to law enforcement officials, both to the DEC's Bureau of Environmental Conservation Investigations (BECI) and to the Organized Crime Task Force (OCTF). *See, e.g.,* Deposition of Warren Reiss, Oct. 14, 1993, at 38–40 (stating that he was told that OCTF received information about the waste hauling industry from the Prisco site); Deposition of George Bradlau, Oct. 21, 1993, at 31–35 (acknowledging that OCTF was offered information Bubenicek and Ward gathered from the Prisco site); Deposition of John Michael Murray, Oct. 26, 1993, at 91–92 (stating that DEC regularly received information from Bubenicek through his informant, Ward).

█ Plaintiff meets her burden as well on the question of whether state authorities delayed closing down the site after violations were found. The court has already noted that "the evidence reveals a dispute as to whether the state kept the Prisco site open for a period of time despite a request by the local NYDEC office that it be closed for environmental violations," *Prisco,* 804 F.Supp. at 523, and I see no reason to disturb that finding. The evidence is ample on this point:

> At the very least, it merits further consideration and should not be rejected on a summary judgment motion.

4. Defendants argue that the court should disregard Bubenicek's unsworn statement (Pl.Ex. 1) for the purposes of summary judgment, since it would be inadmissible hearsay at trial. *See Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994); 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 2721 at 40 (2d ed. 1983) (on a summary judgment motion, "[t]he court may consider any material that would be admissible or usable at trial"). While defendants are correct that hearsay evidence may not be considered for the purposes of a summary judgment motion, *Torres v. CBS News,* 879 F.Supp. 309, 319 n. 13 (S.D.N.Y. 1995) (Wood, J.), I am not persuaded that the statement will be inadmissible at trial. Bubenicek's statement could be considered an admission of a party opponent and thus would not qualify as hearsay. Rule 801(d)(2), F.R.Evid. Such a finding would not require a prior showing that Bubenicek was a state actor for the purposes of CERCLA liability, as defendants claim; it would merely require a showing that Bubenicek was a state servant making a statement "concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Rule 801(d)(2)(D), F.R.Evid. A statement as to whom he had told of his informant activities on the Prisco site is likely to be within the scope of his employment.

5. Defendants argue that DEC Director of Law Enforcement George Firth was the only official with sufficient authority to authorize, and therefore to ratify, Bubenicek's acts. *See New York State Medical Transporters Ass'n v. Perales,* 77 N.Y.2d 126, 132, 564 N.Y.S.2d 1007, 566 N.E.2d 134 (1990) ("[a] principal cannot ratify an agent's act that the principal itself could not have authorized"). Firth flatly denies any knowledge of Bubenicek's involvement in the Prisco site during 1987 and 1988. *See* Deposition of George Firth, Dec. 3, 1993, at 45. I am disinclined to grant summary judgment on this basis, however, since plaintiff has advanced evidence that state officials in policy-making positions were aware of a "sting" operation on the site. Plaintiff's evidence raises adequate concern about state awareness to render this point a disputed question of fact. Furthermore, defendants admit that Paul Keller had authority in the enforcement arena, and could therefore ratify the alleged delay in enforcement of environmental regulations on the Prisco site. Memorandum of Law in Support of New York State Defendants' Motion for Summary Judgment/Dismissal at 27 (Feb. 18, 1994).

Bubenicek sought department intervention to keep the Prisco site open because it was useful to the state as an informant facility, and he may have succeeded. Compare Deposition of Richard A. Gardineer, Sept. 19, 1989, at 44 (stating that Bubenicek's request to keep the site open was denied); with Deposition of Richard A. Gardineer, July 9, 1991, at 126 (stating that Prisco site was kept open for several weeks over Gardineer's objection).

*Id.* In addition, Regional Attorney Judith Ferry has testified to her knowledge of "a series of letters, phone conversations and I believe meetings involving the [Prisco] site owner and the regional director [Paul Keller] and solid waste staff" in which "the closure of the Prisco site was at issue." Deposition of Judith Ferry, Aug. 14, 1989, at 29.

Whether the Prisco operation should be characterized as a state-run "sting" operation or an ordinary source of information for an investigator such as Bubenicek is a disputed question of fact. But plaintiff has offered evidence indicating that the operation was indeed a source of information for the state, that state authorities were aware of the source, and that the state made use of the information. Whether this evidence will be persuasive to a fact-finder is a question that must be answered at trial.

Plaintiff has thus advanced sufficient indicia of state control over the Prisco site to avert summary judgment on CERCLA liability. Furthermore, because the court finds that plaintiff raises genuine issues of material fact as to defendants' CERCLA liability by ratification of Bubenicek's and Ward's acts, it is unnecessary to discuss alternate theories advanced by plaintiff.

■ Defendants offer an additional argument in opposition to the ratification theory. They contend that Bubenicek's guilty plea to official misconduct (for writing to Thomas Prisco on DEC letterhead with the intent to gain commercial benefit from the Prisco landfill) "demonstrates conclusively that his involvement at the Prisco landfill was commercial in nature, and thus inconsistent with it being State-authorized activity." New York State Defendants' Supplemental Memorandum of Law in Support of Motion for Summary Judgment at 2 (Oct. 12, 1994). Defendants further argue that Bubenicek's guilty plea to obstructing governmental administration (for his failure to disclose his involvement with the Prisco landfill to the New York State Standing Committee on Environmental Conservation) "is persuasive evidence that he had otherwise kept his involvement in the Priscos' landfill business a secret." Second Supplementary Memorandum of Law in Support of New York State's Motion for Summary Judgment at 6 (Dec. 19, 1994). Defendants overstate the evidentiary value of the guilty pleas. The pleas do not demonstrate conclusively that Bubenicek was not running a state-authorized "sting" operation on the Prisco site; indeed, they make no mention whatsoever of his non-commercial activities. Bubenicek's convictions do not alter the fact that plaintiff has advanced sufficient evidence to avert summary judgment.

Finally, state defendants argue that they should be granted summary judgment on the CERCLA claims because plaintiffs have not demonstrated "necessary response costs" consistent with the National Contingency Plan. Whether plaintiffs have done so is a disputed question of fact to be determined at trial. *Prisco*, 902 F.Supp. at 387–88. State defendants' motion for summary judgment on plaintiff's CERCLA claims is denied.

## II. RCRA

■ Plaintiff and defendants both move for summary judgment on plaintiff's RCRA claims. Pursuant to 42 U.S.C. § 6972(a)(1)(B), plaintiffs may bring a civil action

against any person ... and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

State defendants contend that their information-gathering and regulatory activities do not incur RCRA liability. For the reasons detailed *supra* at Part I, the court finds that plaintiffs have raised a genuine issue of fact as to whether state defendants qualify as "operators" of the Prisco site who "contributed ... to the past ... disposal" of solid or hazardous waste, as defined in RCRA. Plaintiffs have thus advanced sufficient evidence to defeat summary judgment on RCRA liability. Whether or not state defendants qualify as operators of the Prisco site is a genuine issue of material fact to be determined at trial. Plaintiff's and defendants' motions for summary judgment on the RCRA claims are therefore denied.

### III. CWA

■ Defendants move for summary judgment on plaintiff's CWA claims on the grounds of lack of subject matter jurisdiction. They contend that since the complaint alleges only past violations of the CWA, it is not cognizable by this court. Plaintiff also cross-moves for summary judgment on her claims under the Act. Defendants are correct that citizen suits brought under the CWA may not be based on wholly past violations. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987). Because "there is absolutely no reason to believe that the defendant waste haulers would return to the Prisco site, and no reasonable trier of fact would hold this view," *Prisco*, 902 F.Supp. at 397, defendants are entitled to summary judgment on the CWA claims. Accordingly, plaintiff's motion is denied.

### IV. 42 U.S.C. § 1983

Plaintiff seeks relief under 42 U.S.C. § 1983. She claims that defendants denied her due process of law and just compensation when they operated the landfill on her property so as to accumulate waste materials and debris and to release toxic contaminants, even after violations of environmental regulations had been found on the property. She argues that the unauthorized use of her property as an informant operation constitutes a taking, and that the deterioration of the property under state control is an inverse condemnation. State defendants move to dismiss this claim as foreclosed by the statutory remedies available to plaintiff under CERCLA, RCRA, and CWA. Defendants assert that Prisco's claim under § 1983 is substantively identical to her allegations under the federal environmental statutes. Therefore, defendants argue, plaintiff's civil rights claim is precluded by the comprehensive remedial schemes established by those statutes.

Defendants rely on *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that case, the United States Supreme Court considered a class action brought by an organization of fish harvesters against federal, state, and local officials under CWA and the Marine Protection, Research, and Sanctuaries Act (MPRSA), alleging pollution of fishing grounds due to waste dumping and discharge. The Court first held that neither statute provided an implied right of action, and then addressed the question of whether § 1983 furnished an express Congressional authorization to sue under the statutes. The Court concluded that it did not:

> [w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. As Justice Stewart ... stated in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673, n. 2[, 99 S.Ct. 1905, 1944, n. 2, 60 L.Ed.2d 508] ... (1979) (dissenting opinion), when "a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983."

*National Sea Clammers*, 453 U.S. at 20, 101 S.Ct. at 2626 (footnote omitted).

*National Sea Clammers* stands for the proposition that a federal statute establishing a comprehensive remedial scheme generally will preclude a § 1983 action to enforce those statutory rights. It is not entirely clear,

however, that the preclusion extends to § 1983 actions based on violations of constitutional rights, when brought alongside or in the place of statutory actions. The answer might hinge on the degree of similarity between the statutory and constitutional claims. If the constitutional claim is merely the statutory claim clothed in the language of constitutional violations, it is more likely to be precluded under the statutory scheme. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), *superseded by statute on other grounds*, Pub.L. 99–372 (1986), provides some instruction in this area. Plaintiffs brought claims under the Education of the Handicapped Act (EHA) and various provisions of the U.S. Constitution. Plaintiffs sought attorney's fees, which were available under 42 U.S.C. § 1988 for the constitutional claims, but not available under the EHA. Because the constitutional claims were "virtually identical" to the statutory allegations, *id.* at 1009, 104 S.Ct. at 3466–67, and because "Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education," *id.*, the Court denied attorney's fees under § 1988.

Other case law offers only indirect guidance in this area. In *Garcia v. Cecos Int'l, Inc.*, 761 F.2d 76 (1st Cir.1985), *superseded by statute on other grounds*, Pub.L. 98–616, § 401(d) (1984), the First Circuit found that RCRA's citizen suit provision foreclosed a § 1983 action to enforce the statute. Plaintiffs in *Garcia* argued that the foreclosure did not extend to their § 1983 claims based on constitutional violations, namely "property rights as they pertain to their personal property, and as representatives of the property rights of the general public to enjoy Puerto Rico's natural resources pursuant to the Puerto Rico constitution." *Id.* at 83. This argument was rejected not because of foreclosure but because, as a threshhold matter, the court did not recognize such federal constitutional rights. The district court in *Reeger v. Mill Service, Inc.*, 593 F.Supp. 360 (W.D.Penn.1984), also found that RCRA and other environmental statutes foreclosed civil rights actions, and the district court actually rejected claims alleging constitutional viola-

tions and not statutory ones. The court did not explain this decision, however.

Turning now to the present case, two important questions emerge. First, is plaintiff's § 1983 claim an independent constitutional cause of action, or is it merely a rehash of her statutory claims, cast in constitutional language? Second, did Congress intend RCRA and CERCLA to be the exclusive avenues through which plaintiff may assert the type of constitutional claims she has alleged under § 1983? Neither side has briefed this issue in great detail; indeed, plaintiff has not addressed preclusion at all. I am therefore reluctant to dispose of this claim summarily, particularly since it appears that no court has yet ruled on whether CERCLA forecloses a plaintiff from asserting a cause of action under § 1983. Although I am inclined to agree with state defendants that CERCLA forecloses a § 1983 suit brought to enforce the statute, and plaintiff's constitutional claim appears to be largely identical to her statutory claims, I am not prepared to rule on this motion to dismiss without further briefing from both parties. Accordingly, the motion remains pending.

### V.  Jury Trial

State defendants move pursuant to Rule 39(a)(2), F.R.Civ.P. to strike plaintiff's demand for a jury trial. In response, Prisco cross-moves for an advisory jury under Rule 39(c), F.R.Civ.P. These motions remain before the court pending the disposition of the motion to dismiss plaintiff's § 1983 claims.

### VI.  Personal Injury and Punitive Damages

■ Defendants move to strike all allegations in plaintiff's Second Amended Complaint that set forth claims for personal injury or punitive damages. There are three such instances. First, plaintiff, in her Third Cause of Action of the Second Amended Complaint, claims that she is entitled to "medical costs" under CERCLA. District courts addressing this issue agree, however, that

CERCLA's legislative history clearly indicates that medical expenses incurred in the treatment of personal injuries or disease caused by an unlawful release or discharge of hazardous substances are not recoverable under section 9607(a).

*Brewer v. Ravan,* 680 F.Supp. 1176, 1179 (M.D.Tenn.1988). *See also In re Hanford Nuclear Reservation Litig.,* 780 F.Supp. 1551, 1566 (E.D.Wash.1991); *Chaplin v. Exxon Co.,* No. H–84–2524, 1986 WL 13130 at *2 (S.D.Tex. June 10, 1986) (discussing legislative history). Plaintiff therefore may not seek damages under CERCLA for medical expenses incurred in the treatment of personal injuries or disease.

■ Second, plaintiff seeks punitive damages in the amount of $50,000,000 under 42 U.S.C. § 1983. Since punitive damages are permissible under § 1983 actions against individual state officers, *Carlson v. Green,* 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980), defendants' motion is denied as to these claims.[6]

■ Finally, plaintiff seeks an unspecified amount in punitive damages in paragraph F(14) of her *ad damnum* clause. This generalized claim for punitive damages against defendant state officers in their official capacity cannot stand. The eleventh amendment bars a suit for damages against state officers in their official capacity, absent a waiver by the state or Congressional abrogation of the state's immunity. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). In the present action, CERCLA and 42 U.S.C. § 1983 alone provide such authority for plaintiff to sue for money damages. CERCLA does not recognize claims for punitive damages. *Regan v. Cherry Corp.,* 706 F.Supp. 145, 151–52 (D.R.I.1989). Only under § 1983, then, can plaintiff's generalized claim as well as her specified demand for punitive damages survive.

**6.** Defendants point out correctly that all of plaintiff's damages claims were dismissed as to state defendants, with the sole exception of the CERCLA claims. *Prisco,* 1992 WL 88165 at *7. Since that dismissal, however, plaintiff has amended her complaint to include a cause of action under

*Conclusion*

State defendants' motion for summary judgment as to the CERCLA and RCRA claims is denied. State defendants' motion for summary judgment as to the CWA claims is granted. Plaintiff's cross-motion for summary judgment is denied.

Plaintiff's motion for an order establishing her right to declaratory relief for future response costs is granted.

State defendants' motion to dismiss plaintiff's claims under § 1983 remains before the court, pending further briefing from both sides. State defendants' motion to strike plaintiff's demand for a jury trial, and plaintiff's cross-motion for an advisory jury, also remain before the court. State defendants' motion to strike all allegations in the complaint alleging a right to recover personal injury and punitive damages is granted, with the exception of the claim for punitive damages allowed under 42 U.S.C. § 1983.

IT IS SO ORDERED.

§ 1983. Therefore, her demand for punitive damages under § 1983 is not foreclosed by the previous dismissal of damages claims.