In the Matter of JEAN A. BILOW, as Director of Jefferson County Public Health Services, Petitioner, v RICHARD F. DAINES, as Commissioner of Health, Respondent. [910 NYS2d 199]—

Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Department of Health which required petitioner to reimburse Medicaid for certain overpayments.

As a participant in a Medicaid-funded program known as the Prenatal Care and Assistance Program (hereinafter PCAP), Jefferson County Public Health Service (hereinafter the County) entered into a 1990 contract with respondent that obligated it to administer and coordinate PCAP services provided by local obstetricians and other prenatal service providers (see 10 NYCRR 85.40 [a]). The County, in turn, contracted with local providers such as OBGYN Associates of Northern New York, paid the providers pursuant to a fee schedule, and was reimbursed by Medicaid at a slightly higher rate to cover administrative expenses. In its contract with the Department of Health (hereinafter DOH), the County agreed to "ensure that no duplicate billing occurs" and to "establish procedures whereby it is ensured that laboratory and ultrasound services . . . provided to PCAP patients by outside vendors are not billed directly to Medicaid by the outside vendor."

In 2005, DOH audited all PCAP providers' payments for 2000-2003, and concluded that the County had received an overpayment of $143,324.52. The County did not object to reimbursing the Medicaid program $48,501.55 after determining that such portion of the overpayment occurred as a result of billings by providers not affiliated with the PCAP program. It challenged the remainder of the alleged overpayment, however, which amounted to $94,822.97 arising from improper direct billing of DOH by OBGYN Associates for fetal nonstress tests, a diagnostic test performed in late pregnancy. Reimbursement for fetal nonstress tests was included in a combined or "bundled" service fee that the County paid separately to OBGYN Associates—and for which the County had been reimbursed by DOH. Thus, the separate, direct billing of fetal nonstress tests resulted in

double payment by DOH for those tests. Notably, DOH had advised the County in 1995 and 2000 that fetal nonstress tests "may not be billed separately" under the program, and the County's 1996 and 1998 contracts with OBGYN Associates explicitly stated that fetal nonstress tests were not to be separately billed if performed on the same date of service as a prenatal follow-up visit.[1]

Following a hearing, an Administrative Law Judge confirmed the audit, finding that the County had failed to fulfill its contractual obligation of ensuring that no duplicate billing occurred, and to meet its burden of proving that the overpayment calculated by DOH was incorrect. Petitioner, the County's Director, then commenced this CPLR article 78 proceeding, which Supreme Court transferred to this Court pursuant to CPLR 7804 (g). Inasmuch as substantial evidence supports the determination that the County received a recoverable overpayment of $94,822.97 from the Medicaid program, we now confirm.

As noted above, the County was required under its contract with DOH "to ensure that no duplicate billing" occurred and to "establish procedures whereby it is ensured that laboratory and ultra sound services . . . are not billed directly to Medicaid by the outside vendor[s]." Further, the County agreed to "indemnify and hold [DOH] harmless from and against any and all claims, costs, expenses, . . . losses and liabilities of whatsoever nature arising out of, occasioned by, or in connection with [the County's] performance" of the contract. While the County now objects that DOH should have developed screening methods or written policies regarding detection of duplicate billing, as opposed to placing that responsibility on County PCAP programs, it does not dispute that it failed to prevent duplicate billing.[2] Rather, the County argues that it must be deemed to have fulfilled its contractual obligations regarding the prevention of duplicate billing by complying with the contract's provisions requiring written notification to outside vendors and the use of a referral form identifying the County as the party responsible for payment.

Although the results of prior program audits evince that the County did comply with these contractual provisions, the two procedures set forth—written notification and the use of a refer-

---

1. An investigation of OBGYN Associates was performed at the County's request, at the close of which the Attorney General's Medicaid Fraud Control Unit concluded that criminal prosecution was not appropriate. OBGYN Associates dissolved its practice in 2006.
2. The County acknowledges 1,471 instances of duplicate billing by OBGYN Associates alone.

ral form—are not an exhaustive list of safeguards to prevent duplicate billing. Indeed, the contract expressly states that such procedures "shall include *but not be limited to*" (emphasis added) the two procedures implemented by the County. Nevertheless, despite its agreement to guarantee that providers did not submit bills directly to Medicaid and its awareness that prior fiscal audits revealed that such double billing was occurring, the County made no attempt to access OBGYN Associates' billing records for PCAP patients, as its contract with OBGYN Associates permitted it to do.

In our view, the foregoing constitutes substantial evidence to support the determination that the County failed to prevent double billing, as its contract with DOH required (*see Matter of GMR Living Ctrs. v Novello*, 294 AD2d 851, 851-852 [2002]; *Matter of Clin Path v New York State Dept. of Social Servs.*, 193 AD2d 1034, 1036 [1993]). Given the applicable DOH regulations providing for joint and several liability for overpayments, and that DOH may seek repayment from any person that "has submitted *or caused to be submitted* claims . . . for which payment should not have been made" (18 NYCRR 518.1 [b] [emphasis added]; *see* 18 NYCRR 518.3 [c]), the Administrative Law Judge properly determined that the overpayments made by DOH were recoverable from the County. To the extent that the County now argues that the overpayments must be forgiven because DOH did not seek repayment when the prior fiscal audits revealed double billing, its argument amounts to "nothing more than the assertion of estoppel, which 'cannot be invoked against a governmental agency to prevent it from discharging its . . . duties' " (*Matter of Sunset Nursing Home v DeBuono*, 24 AD3d 927, 928 [2005], *lv denied* 7 NY3d 701 [2006], quoting *Matter of New York State Med. Transporters Assn. v Perales*, 77 NY2d 126, 130 [1990]; *see Oxenhorn v Fleet Trust Co.*, 94 NY2d 110, 116 [1999]).

The County's remaining arguments are either unpreserved or, upon consideration, have been found to be lacking in merit.

Cardona, P.J., Spain, Lahtinen and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.