[687 NYS2d 1]

A.C. TRANSPORTATION, INC., et al., Plaintiffs, VARSITY TRANSIT, INC., et al., Respondents, and ALABASTER BUS SERVICE, INC., et al., Respondents-Appellants, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant-Respondent, and COMMISSIONER OF THE NEW YORK STATE EDUCATION DEPARTMENT et al., Respondents-Appellants.

First Department, January 26, 1999

### APPEARANCES OF COUNSEL

*Joseph R. Harbeson* of counsel (*Cooper & Cooper, L. L. P.,* attorneys), for Varsity Transit, Inc., respondent.

*William O'Brien* of counsel, New York City (*Kronish, Lieb, Weiner & Hellman, L. L. P.,* attorneys), for Caravan Transportation, Inc. and others, respondents.

*Anthony J. Cincotta, P. C.,* for Boyton Bus Inc. and another, respondents.

*Hal Neier* of counsel, New York City (*Barry E. Warner* on the brief; *Friedman Kaplan & Seiler, L. L. P.,* attorneys), for Parochial Bus System, Inc. and another, respondents.

*Eric A. Rundbaken* of counsel, New York City (*Stephen J. McGrath* and *Cheryl Payer* on the brief; *Michael D. Hess,*

*Corporation Counsel* of New York City, attorney), for appellant-respondent.

*John B. Curcio* of counsel, New York City (*Thomas D. Hughes* on the brief; *Dennis C. Vacco, Attorney-General,* attorney), for defendants-respondents-appellants.

## OPINION OF THE COURT

RUBIN, J.

This appeal concerns the amount to be paid to plaintiff school bus operators pursuant to provisions of the Education Law and pertinent New York State Education Department regulations. In dispute are the maximum annual increases prescribed for the extension of existing contracts for the school years commencing in September 1986 and ending in June 1992. At issue is the meaning to be ascribed to Education Law § 305 (14) (as amended, L 1983, ch 914, § 1, eff Aug. 8, 1983) and 8 NYCRR 156.15 (1974 [renum 8 NYCRR 156.5, filed Nov. 28, 1977]). Notwithstanding the misapplication, prior to 1983, of the controlling statute, as then constituted (L 1974, ch 1065, § 1, eff June 15, 1974), by respondent Board of Education and the litigation that followed, this Court finds the law and regulation to be free from ambiguity and clearly dispositive of this dispute.

Plaintiffs provide school bus transportation services within the City of New York to defendant New York City Board of Education for both regular education and special education students. Defendant New York State Education Department reimburses the Board of Education for up to 90% of the cost of transportation services provided to special education students and up to 70% of the cost of such services provided to regular education students.

Following competitive bidding, plaintiffs, or their predecessors in interest, entered into the subject contracts with the New York City Board of Education (the Board) for the transportation of regular education and special education students. Commencing with the 1982-1983 school year, these contracts were extended at a rate limited by the increase in the consumer price index for the applicable period. Education Law § 305 (14) (a) provides, in pertinent part: "The board of education or the trustee of a school district electing to extend a contract as provided herein, may, in its discretion, increase the amount *to be paid* in each year of the *contract extension* by an amount not to exceed the regional consumer price index increase for the N. Y., N. Y.-Northeastern, N.J. area, based upon the index for all urban consumers (CPI-U), *during the*

*preceding twelve month period,* provided it has been satisfactorily established by the contractor that there has been at least an equivalent increase in the amount of his cost of operation, *during the period of the contract.*" (As amended, L 1983, ch 914, § 1, eff Aug. 8, 1983 [emphasis added].) In applying this provision, the Board of Education granted an increase in payment calculated not on the rise in the consumer price index in the year preceding the expiration of the contract, but on the increase in the index during the first year of the contract extension period. This calculation became known as the "base plus one" method.

In 1983, the State Education Department advised the Board that the methodology employed was incorrect. The State took the position that the Education Law requires application of what is termed the "base minus one" method to fix compensation during the contract extension period. The Board of Education thereupon commenced a declaratory judgment action against the then Commissioner of the State Education Department, Gordon Ambach, seeking a declaration that the Commissioner's regulations governing the annual extensions of transportation contracts (8 NYCRR 156.5) were invalid and contrary to Education Law § 305 (14). This litigation culminated in a stipulation dated May 20, 1986 in which the State Education Department approved the base plus one method for the purpose of the computation of increases paid under contract extensions for the school years commencing in 1982, 1983 and 1984. However, the stipulation makes clear that the term "base year" means the 12 months "immediately preceding each school year during which transportation is provided under an extended contract." In 1985, a year before the regular education contracts were to expire, the Board of Education circulated drafts of the contract extension agreements, which expressly provided for the use of base minus one computation, as agreed to in the settlement of the *Ambach* litigation. For reasons not clear, however, the Board continued to employ the old base plus one methodology, in contravention of the terms of the actual contract extension agreements.

In 1992, the Office of the Auditor General issued a series of reports to the contractors based upon its review of their cost justification statements setting forth amounts claimed as overpayments to them and the adjustments that would be made to their contract rates. On June 24, 1992, counsel for the contractors were informed that the Board intended to recover overpayments and reduce compensation rates, consistent with

the Auditor General's reports. A September 8, 1992 letter further advised that the ongoing discussions should not be regarded as a "stay" obviating the need to commence litigation.

Between November 1992 and mid-1993, seven actions were commenced by groups of contractors against the Board of Education, which were later consolidated into this action. An eighth action was added April 5, 1995. On June 9, 1993, Supreme Court (Walter Schackman, J.) ordered the State defendants to be joined and, in response to the amended complaints, the Board asserted cross claims against the State defendants. The essence of plaintiff contractors' claims is that the Board should be prohibited from recouping alleged overpayments for the school years commencing in 1986 through 1992 and from lowering the rates under present contracts. Plaintiffs argue that the base minus one preaudit cost justification procedure is arbitrary, irrational and contrary to the express provisions of Education Law § 305 (14) (a). The essence of the Board of Education's cross claims is that principles of estoppel prevent the State Education Department from recouping overpayments made to the Board should the Board be unsuccessful in recouping the amount of the overpayments from plaintiff contractors.

■ On this appeal, defendant Board of Education seeks reversal of so much of an order of Supreme Court as denied the Board's motion for summary judgment against plaintiffs for their failure to serve timely notices of claim and to comply with the one-year limitation for the commencement of an action (Education Law § 3813 [2-b]); as dismissed the Board's defenses (denominated claims) against the State Education Department predicated upon the equitable grounds of waiver and estoppel, laches and the Statute of Limitations; and as granted the State's motion to dismiss the Board's purported claims for failure to state a cause of action. Some 47 of the plaintiffs in this action cross appeal from so much of the same order as ruled that the State Education Department's construction of the rate at which their contracts are to be extended does not offend Education Law § 305 (14). The State appeals from so much of the order as granted "any relief against defendant the State of New York", contending that there is no ambiguity in the governing regulations.

The terms of Education Law § 305 (14) (a) are clear and unambiguous and leave no room for judicial construction (*Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 675-676; *Matter of Brusco v Braun*, 199 AD2d 27, *affd* 84 NY2d 674; *see*, McKinney's Cons Laws of NY, Book

1, Statutes § 76). It is immediately apparent that the statute addresses the calculation to be made by a body or officer "electing to extend a contract", that is to say, at the time the election to extend the contract is made. Therefore, the statute provides for "the amount to be paid in each year of the contract extension". The Legislature's alternative use of the terms "the contract" and "the contract extension" is significant. Plaintiffs argue that the phrase dealing with the contractor's increase in operating costs "during the period of the contract" is ambiguous. However, taking into consideration both the point in time to which the statute applies and the distinction between "the contract" and "the contract extension", it is obvious that "the preceding twelve month period" and "during the period of the contract" both refer to the retrospective year preceding the expiration of the contract.

Even if this Court were to agree that the statute is subject to conflicting interpretation, the regulations that were promulgated pursuant to the statute leave no doubt as to its intended application by the administrative agency. Specifically, on September 4, 1974, the New York State Education Department issued 8 NYCRR 156.15 (now 8 NYCRR 156.5), which provided:

"(c) Annual extensions * * * may provide for increases * * * not to exceed the contractual amount paid in the preceding year by more than the increase in the national consumer price index for the 12-month period *immediately preceding the month in which the contract terminates*.

"(d) Each district proposing to extend a contract shall file with the commissioner satisfactory evidence of the increase in the cost of the contractor's operation during the 12-month period *immediately preceding the month in which the contract terminates*." (Emphasis added.)

In 1988, this regulation was amended to provide for the use of the regional consumer price index in place of the national index and for the use of the 12-month period ending May 31st for purposes of comparison.

The courts appropriately accord a high degree of deference to an agency's interpretation of the statute that it administers (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791; *Matter of Howard v Wyman*, 28 NY2d 434, 438). This Court is in complete agreement with the construction of the statute reflected in the regulations of the Commissioner of the New York State Education Department. Therefore, plaintiffs have not met their "heavy burden of showing that the regulation is unreasonable and unsupported by any evidence" (*Matter of Consolation Nurs-*

*ing Home v Commissioner of N. Y. State Dept. of Health,* 85 NY2d 326, 331-332), and the Board of Education is entitled to summary judgment dismissing so much of plaintiffs' complaints as seek to bar collection of the overpayments based upon the construction of the governing statute.

■ Supreme Court appropriately denied the Board's motion to dismiss the complaints predicated on the failure to submit a notice of claim and on the one-year Statute of Limitations contained in Education Law § 3813 (2-b). As to the accrual of the claims, it need only be observed that an administrative action becomes "final and binding when it 'has its impact' upon the petitioner who is thereby aggrieved" (*Matter of Edmead v McGuire,* 67 NY2d 714, 716). By letter dated June 24, 1992, the Board of Education informed plaintiffs that it intended to recoup any overpayment of funds, but went on to state that plaintiffs could still present documentation to substantiate any increase in their operating costs. Thus, there is no indication that the Board had made a final determination with respect to the amount of the overpayments (*see, Eastern Envtl. Servs. v Brunswick Cent. School Dist.,* 188 AD2d 777, 778). As the Court of Appeals has observed, a "petitioner cannot be said to be aggrieved by the mere issuance of a determination when the agency itself has created an ambiguity as to whether or not the determination was intended to be final" (*Matter of Biondo v New York State Bd. of Parole,* 60 NY2d 832, 834, citing *Mundy v Nassau County Civ. Serv. Commn.,* 44 NY2d 352).

■ Supreme Court was also correct to dismiss the Board of Education's defenses (affirmatively asserted as claims) to the recoupment of funds paid to it by the New York State Education Department. The defense of estoppel (or ratification, acquiescence or laches) "cannot be invoked against a governmental agency to prevent it from discharging its statutory duties" (*Matter of New York State Med. Transporters Assn. v Perales,* 77 NY2d 126, 130). For the purpose of discouraging fraud on a massive scale (*Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359, 370), the assertion of estoppel against a governmental entity "is foreclosed 'in all but the rarest cases'" (*Matter of New York State Med. Transporters Assn. v Perales, supra,* at 130, quoting *Matter of Parkview Assocs. v City of New York,* 71 NY2d 274, 282, *appeal dismissed and cert denied* 488 US 801).

■ Plaintiffs similarly seek to avoid collection of the overpayments made to them by the Board of Education. While denominated as various causes of action for breach of contract, acquiescence and waiver, ratification, laches and estoppel, the

gravamen of their defense to the Board's efforts at recoupment is the defense of estoppel. Supreme Court did not reach this issue, apparently acquiescing in a letter agreement among counsel to defer litigation of this issue until other points had been decided. However, it would seem axiomatic that if the municipal defendant cannot invoke estoppel against the State Education Department, plaintiffs cannot invoke the theory against the municipality.

It is well settled that, in deciding the propriety of a summary judgment motion, a court (even an appellate court) may search the record and grant summary judgment to the nonmoving party on any related claim (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-112 [summary judgment properly granted to nonappealing parties]; *cf.*, *Frank v City of New York*, 211 AD2d 478). Plaintiffs all sought summary judgment against the Board of Education. Given the conclusions of fact reached by this Court, a review of the record is warranted to determine if there is any validity to plaintiffs' estoppel defense.

Leaving aside, for the moment, the bar against asserting the defense against a governmental agency, plaintiffs' estoppel theory is disingenuous. To prevail, plaintiffs must show that they were induced to change their position in reliance upon some promise or action by the Board of Education, as the result of which they sustained a detriment. Plaintiffs contend, typically, that they were induced to accept funds in reliance upon the Board's continued payment at the improper rate, as the result of which they made "spending and other business decisions". Apart from the failure to specify what detriment was incurred, the pleading fails in view of this Court's finding that plaintiffs were on notice that payment was being made at an inflated rate. Plaintiffs "must be deemed to have acted in the light of what the law presumes them to have known in this respect. And, since this is so, they can hardly urge that they undertook their capital improvements in consideration of an irrevocable promise or agreement that their [compensation] would continue to be computed in accordance with the formula set up by the [governmental agency]" (*Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 308).

Furthermore, there is no merit to plaintiffs' contention that the Board of Education was acting in a proprietary and not a governmental capacity in setting the rate of compensation for the provision of school bus services. The Board is empowered to contract for the transport of pupils pursuant to Education Law § 305 (14) (a) and General Municipal Law § 103 (*Matter of*

*Acme Bus Corp. v Board of Educ.*, 91 NY2d 51, 53), the purpose of which is "the protection of taxpayers, not the benefit of contractors" (*Depot Constr. Corp. v City of New York*, 46 NY2d 859, 861). The Court of Appeals has stated that statutes requiring competitive bidding in the letting of public contracts should "be construed and administered 'with sole reference to the public interest' " (*Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth.*, 66 NY2d 144, 148, quoting 10 McQuillin, Municipal Corporations § 29.29, at 302 [3d rev ed]). Therefore, this Court has no hesitation in holding that the Board of Education engaged in a governmental function in contracting for school bus services and that the rule barring the assertion of estoppel "against a governmental agency engaging in the exercise of its governmental functions" (*D'Angelo v Triborough Bridge & Tunnel Auth.*, 65 NY2d 714, 715-716) extends to the subject contracts. The estoppel claims advanced by plaintiffs, however denominated and elaborated, are therefore subject to dismissal.

Certain estoppel claims remain viable, however. In 1990, plaintiffs Caravan Transportation, Inc., Caravan Coach Corp. and Caravan Transit, Inc. and plaintiff Surfside Bus Corp. entered into extension agreements with the Board of Education to take over contracts held by other operators. Their complaints allege that they assumed the contracts on the assurance that there were no outstanding claims against these operators and assert that the Board is thereby estopped to recoup from them overpayments made to their predecessors. This dispute turns entirely on the representations made to these plaintiffs to induce them to assume the underlying contracts under which overpayments had been made. There remains the question of whether these plaintiffs will be able to demonstrate an "unusual factual situation" comprising an exception of "very limited application" to the general rule (*Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88, 93-94, n 1). Therefore, the actions brought by these plaintiffs should be severed and continued.

Plaintiffs Varsity Transit, Inc. and Pupil Transportation Systems, Inc. advance certain claims that concern only the accounting methods used in performing audits and do not contest the basis for calculating contract increases. These causes of action should likewise be severed and continued.

Accordingly, the order of the Supreme Court, New York County (Emily Goodman, J.), entered April 29, 1997, which (1) granted the State defendants' motion to dismiss the Board of Education's cross complaint for failure to state a cause of ac-

tion; (2) denied the Board's motion for summary judgment against plaintiffs dismissing their causes of action based on estoppel, waiver, acquiescence, laches and Statute of Limitations; and (3) denied the Board's motion for summary judgment against plaintiffs for failure to file timely notices of claim and failure to commence actions within the one-year Statute of Limitations (Education Law § 3813 [1], [2-b]), should be modified, on the law, to the extent of granting the Board's cross motion for summary judgment dismissing the complaints of all plaintiffs except those of plaintiffs Caravan Transportation, Inc., Caravan Coach Corp., Caravan Transit, Inc. and Surfside Bus Corp., and except the fifth cause of action of plaintiff Varsity Transit, Inc. and the third cause of action of plaintiff Pupil Transportation Systems, Inc., and otherwise affirmed, without costs. The Board of Education of the City of New York's appeal from the order of the same court and Justice, entered April 4, 1997, should be dismissed, without costs, as subsumed in the appeal from the order entered April 29, 1997.

Motions for reargument by Varsity Transit, Inc. (M-7257) Surfside Bus Corp. (M-7258), Caravan Transportation, Inc., Caravan Coach Corp., Caravan Transit, Inc. (M-7270), and Pupil Transportation Systems, Inc. (M-7305) granted, and upon reargument, the unpublished decision and order of this Court entered on October 6, 1998 (Appeal Nos. 1065-1066) is recalled and vacated, and a new decision and order substituted therefor. Motions for reargument by Parochial Bus System, Inc. and Pioneer Transportation Corp. (M-7302) and all other plaintiffs (M-7303) are denied. All motions for leave to appeal to the Court of Appeals are denied.

NARDELLI, J. P., WALLACH and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered April 29, 1997, modified, on the law, to the extent of granting the Board of Education's cross motion for summary judgment dismissing plaintiffs' complaints except those of plaintiffs Caravan Transportation, Inc., Caravan Coach Corp., Caravan Transit, Inc. and Surfside Bus Corp., and except the fifth cause of action of plaintiff Varsity Transit, Inc. and the third cause of action of plaintiff Pupil Transportation Systems, Inc., and otherwise affirmed, without costs; appeal from order, same court and Justice, entered April 4, 1997, dismissed, without costs, as subsumed in the appeal from the order entered April 29, 1997. The unpublished decision and order of this Court

entered herein on October 6, 1998 is hereby recalled and vacated.