Vincent Crisafulli Testamentary Trust, Plaintiff,

against
AAI Acquisition, LLC and UNITED ELECTRIC POWER, INC., Defendants.


6784-17

Lippes Mathias Wexler Friedman LLP
Attorneys for Plaintiff
(Robert E. Ganz, of counsel)
One Columbia Circle
Albany, New York 12203
Robert J. Ansell, Esq.
General Counsel to AAI Acquisition, LLC and United Electric
Power s/h/a United Electric Power, Inc.
270 Park Avenue
New Hyde Park, New York 11040


Richard M. Platkin, J.

Plaintiff Vincent Crisafulli Testamentary Trust ("Trust") brings this action to enforce the terms of an alleged commercial lease and guarantee. Plaintiff, the owner of a 60,000 square foot building, seeks to recover money damages from AAI Acquisition, LLC ("Acquisition"), as the alleged lessee, and United Electric Power, Inc. ("United Inc."), as the alleged guarantor. [*2]Following some paper discovery, plaintiff moves for summary judgment on its verified complaint ("Complaint"). Defendants oppose the motion.
BACKGROUND
This action concerns the alleged breach of a commercial lease of warehouse and distribution space located at 875 Broadway, Albany, New York ("Premises"). In 2009, about 40,000 square feet of the Premises were leased to Auburn Armature, Inc. ("AAI"). On May 19, 2017, AAI filed for Chapter 11 bankruptcy protection in the Northern District of New York.
Within one week of its bankruptcy filing, AAI moved to sell all of its assets to defendant Acquisition and to have certain executory contracts, including AAI's lease with the Trust ("Lease"), assumed by, and assigned to, Acquisition.[FN1]
 On June 26, 2017, the Bankruptcy Court granted the motion and entered an order approving the asset purchase agreement.
Shortly thereafter, Acquisition's principal, Gerald J. DiCunzolo, sought to negotiate a more permanent arrangement with respect to the assumed leases, including the Lease with the Trust. Negotiations then ensued between DiCunzolo and Frank J. Crisafulli, the Trustee of the Trust ("Crisafulli").
The Trust and Acquisition then entered into a July 11, 2017 letter agreement that replaced the Lease with a new agreement that, among other things, added two years to the lease term, modified the rental stream, and gave Acquisition a purchase option on the Premises (see Ganz Aff., Ex. D ["Letter Agreement"]). The Letter Agreement further provided that Acquisition's lease obligations "shall be guaranteed by [Acquisition's] affiliate United Electric Power, Inc." (id., p. 2). The Letter Agreement recites that it was intended to "set forth the binding business terms of the agreement which will be supplemented by an appropriate set of legal documents approved by counsel for both parties to be fully executed within 30 days" (id., p. 1). The Letter Agreement is signed by Crisafulli, as trustee of the Trust, and DiCunzolo, as president of Acquisition.
Acquisition then entered into possession of the Premises, and it made rent payments for July and August. However, on August 28, 2017, Acquisition advised the Trust that it intended to abandon the Premises, and it ultimately vacated the Premises in September 2017. Acquisition did pay the September rent, but has not made any payments thereafter pursuant to either the Lease or the Letter Agreement.
In an attempt to mitigate damages, the Trust found a replacement tenant who began paying rent effective November 1, 2017. Based on the differential in rent, however, the Trust claims damages of $193,350 through July 2022 (see Ganz Aff., Exs. D-F & O), which is the extended lease term prescribed in the Letter Agreement.
Plaintiff commenced this action on October 17, 2017 through the filing of a complaint alleging three contractual causes of action: (1) breach of the Letter Agreement; (2) breach of the guarantee provision of the Letter Agreement ("Guaranty"); and (3) breach of the assumed Lease. Defendants joined issue on December 1, 2017, and the parties engaged in some paper discovery prior to the instant motion practice.
DISCUSSION
"To prevail on a motion for summary judgment, the moving party must establish prima facie entitlement to judgment as a matter of law by adducing sufficient competent evidence to show that there are no issues of material fact" (Staunton v Brooks, 129 AD3d 1371, 1372 [3d Dept 2015] [citations omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If the movant fails to satisfy this initial burden, the motion must be denied, "regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324). But if the movant meets the initial burden, the burden shifts to the nonmoving party to demonstrate the existence of disputed material facts or a legal defense to the claim (see id.).
A. Letter Agreement
For its first cause of action, the Trust seeks to recover for Acquisition's alleged breaches of the Letter Agreement. In opposing this branch of the motion, defendants make two principal arguments: (1) the Letter Agreement is not a binding contract; and (2) the Letter Agreement did not become effective due to the nonoccurrence of a condition precedent. 
1. Contract Formation
a. Legal Principles
As the plaintiff in this action and movant for summary judgment on a contractual claim, the Trust bears the burden of establishing the formation of a valid contract, Acquisition's breach, and the Trust's own performance (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [3d Dept 2009]). 
To demonstrate the formation of a valid contract, the Trust must adduce objective evidence of the parties' mutual assent to the alleged agreement and their intention to be bound thereby (see Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399-400 [1977]; Kowalchuck v Stroup, 61 AD3d 118, 121 [1st Dept 2009]). 
The Trust must also establish the material terms of the alleged contract with reasonable certainty (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]). "[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable" (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981]). On the other hand, "where it is clear from the language of an agreement that the parties intended to be bound . . . , the court should endeavor to hold the parties to their bargain" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91 [1991]; accord Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1254 [3d Dept 2016]).
Inasmuch as the Letter Agreement constitutes a lease of real property, there must also be compliance with the Statute of Frauds (see General Obligations Law § 5-703 [1], [2]). "[A] memorandum, subscribed by the party to be charged, must designate all parties, identify and describe the subject matter and state all of the essential terms of a complete agreement" (Conway v Maher, 185 AD2d 570, 572 [3d Dept 1992]; see Regan v Real Source Charities, Inc., 45 AD3d 1156, 1157 [3d Dept 2007]; Cohen v Swenson, 140 AD2d 407, 407 [2d Dept 1988]).
b. Analysis
Applying the foregoing principles, the Court is satisfied that plaintiff has demonstrated that the Letter Agreement is a valid and binding contract that is sufficiently definite in its material terms and otherwise complies with the Statute of Frauds.
Beginning with the issue of contract formation, the plain language of the Letter Agreement [*3]evinces the parties' intention that the writing sets forth "the binding business terms of the[ir] agreement" (Letter Agreement, p. 1; see id. p. 2 ["business terms to which we have agreed"]). While the parties did contemplate that these "binding business terms" would "be supplemented by an appropriate set of legal documents approved by counsel for both parties to be fully executed within 30 days" (id., p. 1),[FN2]
 there was no "express reservation by either party of the right not to be bound until a more formal agreement is signed" (Bed Bath & Beyond Inc. v IBEX Constr., LLC, 52 AD3d 413, 414 [1st Dept 2008]; see Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC, 160 AD3d 632, 634-636 [2d Dept 2018]; Netherlands Ins. Co. v Endurance Am. Specialty Ins. Co., 157 AD3d 468, 469 [1st Dept 2018]; Moshan v PMB, LLC, 141 AD3d 496, 496 [1st Dept 2016]; Emigrant Bank v UBS Real Estate Sec., Inc., 49 AD3d 382, 384 [1st Dept 2008]). In other words, the Letter Agreement's "plain language expressed the parties' intention to be bound" thereby (Trolman v Trolman, Glaser & Lichtman, P.C., 114 AD3d 617, 618 [1st Dept 2014], lv denied 23 NY3d 905 [2014]). 
Given this clear and objective manifestation of the parties' intention to be bound by the Letter Agreement, it is of no moment that DiCunzolo now claims to have lacked the subjective intent to enter into a binding agreement on behalf of Acquisition (see DiCunzolo Aff., ¶ 17). "[T]he existence of a binding contract is not dependent on the subjective intent of [the parties]" (Brown Bros. Elec. Contrs., 41 NY2d at 399).[FN3]
 
The Court further concludes that the Letter Agreement sets forth the material terms of the parties' agreement with reasonable certainty. The Letter Agreement describes the demised Premises, states that the new lease would be on the same terms and conditions as the prior Lease, except as otherwise modified therein, and then sets forth the modified terms and conditions of the new lease. And while the parties contemplated supplementation of the Letter Agreement via formalized "legal documents approved by counsel" (p. 2), the Letter Agreement sets forth all of the essential terms of a lease agreement, and defendants have not identified any missing terms that were material to the transaction.[FN4]
 That the Letter Agreement "stated that a more formal contract was to be signed does not render [it] unenforceable" (Pescatore v Manniello, 19 AD3d 571, 572 [2d Dept 2005]).
For all of the foregoing reasons, the Trust has demonstrated that the Letter Agreement is a valid and binding contract, and defendants have failed to raise a triable issue of fact or legal defense to this branch of the motion.
[*4]2. Condition Precedent
Defendants next contend that the Letter Agreement never became effective due to the failure of the condition precedent set forth in its second paragraph:
[AAI] has filed for bankruptcy . . . and, as part of that reorganization process, an Order has been entered . . . to which [the Trust] has consented, by which [Acquisition] becomes [the Trust's] tenant at [the Premises] with the following modifications and additional grant of rights, provided that [AAI] and [Acquisition] timely complete the transaction described in the Order, including but not limited to the payment to [the Trust] of the Cure Cost owed it.
The 26-page Order of the Bankruptcy Court referenced in the Letter Agreement determined, among other things, that "[t]he debtors have established a prompt cure of any and all defaults under the Assumed Contracts, as required by Bankruptcy Code § 365 (b)" (DiCunzolo Aff., Ex. J ["Order"], p. 9). According to defendants, however, "[d]espite what the Order states, . . . [AAI] did not pay its cure costs to plaintiff in a timely manner. Despite the fact that the Order is dated June 26, 2017, as of at least March 15, 2018 . . . , [AAI] had still not paid the cure costs owed to plaintiff" (DiCunzolo Aff., ¶ 30).
In reply, the Trust acknowledges that the cure payment, amounting to the relatively nominal sum of $4,152.74, was not paid until shortly after the March 15, 2018 hearing before the Bankruptcy Court (see Ganz Reply Aff., Ex. S). The Trust asserts, however, that the issue of whether AAI or Acquisition was going to make the cure payment was not free from doubt until the Bankruptcy Court provided clarification at the hearing and, in any event, the Trust was entitled to, and did in fact, waive compliance with the alleged condition precedent.
As an initial matter, the Court is not convinced that the highly equivocal language of paragraph two of the Letter Agreement represents a condition precedent, rather than a contractual promise or a mere recitation of the circumstances giving rise to the new agreement.[FN5]
 Nor is the Court convinced that Acquisition can collaterally attack the determination of the Bankruptcy Court that the debtor, AAI, established a prompt cure under the assumed contracts, including the Lease with the Trust, and gave adequate assurance of the same (see Order, p. 9).
In any event, even if paragraph two of the Letter Agreement were deemed to constitute a condition precedent and the June 26, 2017 Order of the Bankruptcy Court were not conclusive on [*5]this point, despite its reaffirmance by the Bankruptcy Court at the March 15, 2018 hearing, it is apparent that the alleged condition concerning cure costs was intended for the sole benefit and protection of the Trust. As such, the Trust was entitled to, and did in fact, waive satisfaction of the alleged condition precedent by performing under the Letter Agreement and accepting Acquisition's performance, despite the nonoccurrence of the alleged condition during the entire period in which Acquisition occupied the demised Premises (see Kamco Supply Corp. v On the Right Track, LLC, 149 AD3d 275, 282-283 [2d Dept 2017], lv dismissed 30 NY3d 1036 [2017]).[FN6]

3. Conclusion
Based on the foregoing, the Court concludes that plaintiff has demonstrated its entitlement to summary judgment on its first cause of action and to an award of damages in the sum of $193,350.23, representing the difference between the rent obligations owed by Acquisition under the Letter Agreement and the amount of rent paid by the new tenant (see Ganz Aff., Ex. F).[FN7]
 Plaintiff has further demonstrated its entitlement to an award of counsel fees relative to the first cause of action (see Lease, ¶ 41), which shall be determined at the conclusion of this litigation.
B. Breach of Guaranty
The second cause of action seeks recovery against United Inc. pursuant to the alleged Guaranty, which provides that "[t]he lease obligations described . . . in [the Letter Agreement] shall be guaranteed by [Acquisition's] affiliate [United Inc.]" (Letter Agreement, ¶ 6). In this regard, the Complaint alleges that the Guaranty was necessary inasmuch as Acquisition "was newly formed and had no assets other than the assets acquiring in the bankruptcy and was funded entirely b[y] Mr. DiCunzolo's other business interests" (Compl., ¶ 12). The Trust further alleges that "Mr. DiCunzolo is an owner and authorized representative of [United Inc.] which . . . is the sole member of [Acquisition] and was represented to the Trust by Mr. DiCunzolo to be its parent and controlling entity" (id.). In addition, DiCunzolo allegedly "was authorized to act on behalf of [United Inc.]" (id., ¶ 25).
In opposing this branch of the motion, defendants observe that there is no legal entity named [*6]"United Electric Power, Inc."[FN8]
 Rather, United Electric Power ("United Electric") is a d/b/a for Power-Flo Technologies, Inc. ("Power-Flo") (see DiCunzolo Aff., ¶¶ 1, 33-34). Further, defendants assert that neither United Electric nor the nonexistent United Inc. signed the Letter Agreement or otherwise evinced their intention to be bound thereby (see id., ¶ 25). Defendants further argue that the Letter Agreement does not recite any consideration for the Guaranty.
To obtain summary judgment on the Guaranty, the Trust must proffer "evidence of the executed . . . guarantee, as well as [defendants]' default in payment" (Creative Culinary Concepts, LLC v Sam Greco Constr., Inc., 134 AD3d 1294, 1295 [3d Dept 2015]). This requires the Trust to establish, among other things, that the alleged guarantor, United Electric, is bound by the Letter Agreement, notwithstanding the facts that: (1) DiCunzolo signed the Letter Agreement only once and did so solely in his capacity as president of Acquisition; and (2) both the Letter Agreement and the Complaint name United Inc., a nonexistent entity, as the guarantor/defendant.
With respect to the first issue, it is well settled "that an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his [or her] personal liability for, or to, that of his [or her] principal" (Salzman Sign Co. v Beck, 10 NY2d 63, 66-67 [1961] [internal quotation marks and citation omitted]). Noting the "nearly universal practice" of requiring a second signature by a corporate officer who signs an agreement purporting to impose personal liability for the corporation's obligations, "once as an officer and again as an individual," the Court of Appeals held that a statement in a contract purporting to bind the signing officer individually "is not sufficient for Statute of Frauds purposes without some direct and explicit evidence of actual intent" (id. at 67). This evidence must "be gathered from the writing itself" (Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1, 5 [1964]).[FN9]

In seeking to provide clear and explicit evidence of United Electric's intention to be bound by the Guaranty, the Trust cites: the clear and conspicuous language of the Guaranty; the brevity of the Letter Agreement; the fact that the Guaranty was a part of the negotiations preceding execution of the Letter Agreement, and there was no objection by DiCunzolo to its inclusion; and DiCunzolo's role as the owner and chief executive of United Electric, which is an alleged affiliate of Acquisition (see Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v Lollo, 35 F3d 29, 35 [2d Cir 1994]).[FN10]
 
The Trust also relies upon an alter-ego/agency theory to bind United Electric, citing allegations that DiCunzolo is an owner and authorized representative of United Electric, United [*7]Electric's alleged role as the sole member of Acquisition, and representations made by DiCunzolo that United Electric was Acquisition's parent and controlling entity (see Horsehead Indus. v Metallgesellschaft AG., 239 AD2d 171, 172 [1st Dept 1997]).
The Trust further contends that defendants should be equitably estopped from denying the liability of United Electric as guarantor. Estoppel "is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled" (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982]). In this regard, the Trust cites DiCunzolo's conduct in communicating with Crisafulli in emails signed as the president of United Electric and DiCunzolo's subsequent failure to advise Crisafulli that United Electric was misnamed as United Inc. in the Letter Agreement.
The Court concludes that the present record is insufficiently developed to warrant a grant of summary judgment on the second cause of action. The Trust bears the ultimate burden of establishing that United Electric, a non-signatory to the Letter Agreement, manifested a clear intention to bind itself to the Guaranty and that defendants should be estopped from denying the liability of United Electric as guarantor. While the limited proof adduced by the Trust in support of its motion provides some support for finding United Electric liable under the Guaranty, the present record falls short of demonstrating plaintiff's entitlement to judgment as a matter of law.
In the Court's view, the factual predicates asserted by the Trust as a basis for holding United Electric liable under the Guaranty should be the subject of discovery, including: the relationship between and among DiCunzolo, Acquisition, United Electric and United Inc.; the conduct giving rise to Crisafulli's belief that DiCunzolo had the authority to bind United Electric and/or United Inc.;[FN11]
 the representations made by DiCunzolo to the Trust during negotiations; and whether there is any performance on the part of Acquisition that is unequivocally referable to the Letter Agreement.
Based on the foregoing, the branch of plaintiff's motion seeking summary judgment on the second cause of action is denied, without prejudice to renewal on a fuller and firmer factual record following the completion of all discovery.[FN12]

C. Lease
Finally, the Trust moves for summary judgment on its third cause of action, seeking recovery under the assumed Lease. Given the Court's conclusion that the Letter Agreement is a valid and binding contract that superseded the original Lease, plaintiff cannot obtain recovery under the original Lease. In light of the foregoing, the Court exercises its discretion to search the record and dismisses the third cause of action (see CPLR 3212 [b]; see generally Dunham v Hilco Const. Co., Inc., 89 NY2d 425, 429-430 [1996]; A.C. Transp. v Board of Educ. of City of NY, 253 AD2d 330, 338 [1st Dept 1999], lv denied 93 NY2d 808 [1999]). 
[*8]CONCLUSION
Accordingly, it is
ORDERED that the branch of plaintiff's motion for summary judgment on the first cause of action is granted in accordance with the foregoing; and it is further
ORDERED that plaintiff's third cause of action is dismissed; and it is further
ORDERED that the parties shall complete all remaining discovery by October 31, 2018; plaintiff shall file a note of issue by November 30, 2018; and the parties shall appear for a compliance conference on December 10, 2018 at 11:00 a.m; and finally it is
ORDERED that no further dispositive motions shall be made prior to the compliance conference.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to plaintiff's counsel for filing and service; all other papers are being sent to the Albany County Clerk. The signing of this Decision & Order shall not constitute entry or filing under CPLR 2220, and counsel is not relieved from the applicable provisions of that section respecting filing, entry and Notice of Entry.
Dated: August 10, 2018
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
1. Notice of Motion for Summary Judgment, dated April 12, 2018; Affidavit of Robert E. Ganz, Esq., sworn to April 12, 2018, with attached exhibits; Affidavit of Frank J. Crisafulli, sworn to April 12, 2018; Plaintiff's Memorandum of Law in Support of Summary Judgment, undated;
2. Affidavit in Opposition of Gerald J. DiCunzolo, sworn to May 14, 2018, with attached exhibits; Defendant's Memorandum of Law in Opposition to Plaintiff's Summary Judgment Motion, dated May 15, 2018;
3. Reply Affidavit of Robert E. Ganz, Esq., sworn to May 24, 2018, with attached exhibits; and Plaintiff's Reply Memorandum of Law, undated.



Footnotes

Footnote 1: Under the Bankruptcy Code, AAI could have sought the rejection of its executory contracts, including the Lease (see 11 USC § 1107 [a]).

Footnote 2: The Trust's counsel prepared formal lease and guaranty documents and transmitted them to Acquisition on August 4, 2017 (see Ganz Reply Aff., Ex. P, p. 1), but Acquisition refused to sign them.

Footnote 3: In view of this conclusion, the Court need not decide whether DiCunzolo's averment is incredible as a matter of law, given his subsequent communication to Crisafulli in which he advised that there was no "need to spend the money on a new lease when a side letter will do" (Ganz Reply Aff., Ex. P, p. 4).

Footnote 4: For substantially the same reasons, the Court concludes that the Letter Agreement, which is a writing subscribed by Acquisition's president, complies with the Statute of Frauds.

Footnote 5: A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises" (Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 690 [1995] [internal quotation marks and citation omitted]). "Express conditions must be literally performed; substantial performance will not suffice" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009]). "In determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture by the obligee" (Oppenheimer & Co., 86 NY2d at 691 [citation omitted]; see Unigard Sec. Ins. Co. v North Riv Ins. Co., 79 NY2d 576, 581 [1992]). 

Footnote 6: Moreover, as the Trust argues, satisfaction of the alleged condition was not in its control, and there was some lack of clarity concerning responsibility for this obligation until the Bankruptcy Court hearing of March 15, 2018 (see e.g. Ganz Aff., Ex. S).

Footnote 7: While defendants claim that it would be premature to grant summary judgment on damages without the taking of depositions, defendants have not demonstrated, through the submission of admissible proof, how further discovery might reveal evidence within the exclusive knowledge of plaintiff regarding its computation of damages (see CPLR 3212 [f]; Green v Covington, 299 AD2d 636, 637 [3d Dept 2002]; Landes v Sullivan, 235 AD2d 657, 658 [3d Dept 1997]; Halsey v County of Madison, 215 AD2d 824, 824-825 [3d Dept 1995]). In this connection, the Court observes that plaintiff has supplied the lease with the new tenant and a spreadsheet showing the computation of its damages, and defendants have not shown how the deposition of plaintiff would bear on the computation of damages.

Footnote 8: United Inc. was formed as a business corporation in 2003, but was dissolved in October 2010 (see Ganz Reply Aff., Ex. T).

Footnote 9: The Statute of Frauds requires that an agreement constituting "a special promise to answer for the debt, default or miscarriage of another person" must be memorialized in a writing signed by the party to be charged (General Obligations Law § 5-701 [a] [2]). 

Footnote 10: In certain respects, Lollo and the authorities it relies upon are distinguishable, since plaintiff does not seek to impose personal liability on DiCunzolo as the signing agent. Rather, the issue here is whether the agent and/or the principal can bind a third party to the Guaranty.

Footnote 11: In opposing the motion, DiCunzolo denies making any representations to Crisafulli as to the relationship between United Electric and Acquisition (see DiCunzolo Aff., ¶ 33), which directly controverts Crisafulli's averments.

Footnote 12: The Court is unpersuaded by plaintiff's alternative argument: that the emails preceding execution of the Letter Agreement manifested United Electric's assent to the Guaranty.